## William Armstrong v. Lucetta R. Medbury.

*Negligence—Injury occurring from defect on premises of manufact-
urer—License—Rights of owner.*

1. A person driving upon the premises of another for a lawful pur-
   pose is bound to leave by the usual, ordinary, and customary
   *way* in which the premises are and have been departed from, if
   safe and in good condition; and if for his own convenience, or
   other reason (than defect in such way), he leaves *such way*, he
   becomes at best a licensee, and canno: recover for injuries from
   a defect outside of such way, unless substantially adjacent
   thereto; and a defect 25 feet distant is not so adjacent.
2. A manufacturer cannot reasonably suppose that his premises will
   be used, as to ingress or egress, in any other manner than over
   ways well defined, from constant usage, for such purpose.
3. A manufacturer is under no obligation to render his premises safe
   for any purpose for which he could not reasonably anticipate
   they would be used.
4. Persons engaged in a manufacturing business must be allowed to
   use their premises for that purpose in such manner as they may
   choose, so long as that management is not dangerous to the
   ordinary use by the public having business with them, or to their
   employés.

Error to Oakland. (Stickney, J.) Argued June 8, 1887.
Decided October 20, 1887.

Case. Defendant brings error. Reversed. The facts are
stated in the opinion.

*Charles B. Lothrop,* for appellant.

*Thomas J. Davis* and *Theo. Hollister,* for plaintiff.

Sherwood, J. The defendant in this case is the owner
of the Pontiac Gas works, fronting Wesson street.

The buildings of the works consist of a retort, purifying
house, and a holder, and all stand facing the street, and

19 feet from the line thereof. They are 42 feet from the graveled or traveled portion of the street. There is no fence between it and the buildings. The other sides of the premises, except where they lie next to the railroad, are fenced.

The ground is level about the buildings. The center of the street and the railroad track are, however on a grade about three feet higher.

The holder is on the extreme west side of the premises. Eight and one-half feet east of it is the purifying house, and 25 feet east of that is the retort. The street is on the north side of the buildings; and directly south, and a few feet from the retort and purifying house, stands the coke-shed, which is reached by two well-defined, traveled tracks, extending from the street to the shed, passing over the vacant space in front of the buildings, and between the retort and purifying house.

When coke was taken from the shed, the wagons were sometimes backed in between the two buildings, and at others were driven in on one track, and, when the load was obtained, passed out on the other; both tracks being well defined, and well known to those who did business with the gas works.

On the second day of April, 1885, the plaintiff, who drove a one-horse express wagon, and was entirely familiar with the grounds, went to the shed with his horse and wagon, and got a load of coke. In returning, he passed out on one of the tracks mentioned, into the highway, where his horse became very restless at an approaching train of cars, and finally refused to go further.

The two tracks upon which the coke-shed was reached were about 58 feet apart at the highway, and the plaintiff attempted to return, and go out on the other track. In so doing he lost control of his horse, which ran up near the north-west corner of the purifying house, and there went down into the ground at a place made soft and spongy by

the escape of steam from a broken pipe in the ground, and before the animal could be extricated it was so injured as to become worthless. The horse was valued at $100.

For the value of the animal thus injured the plaintiff brings suit, and alleges, as the ground of his action, that the defendant was negligent in not knowing of this dangerous place, if she did not know, and properly protecting persons going upon her premises, and their horses from injury, by a fence, or by giving them some proper warning of the danger.

The cause was tried at the Oakland circuit, before Judge Stickney and a jury, and under the rulings and charge of the court the plaintiff had judgment for the value of the horse.

The testimony of both parties showed that the place where the accident occurred was at least 25 feet from any track upon the grounds used for passing in and out by men and teams, and that it was used for other and different purposes (it was used by the defendant in preparing material for the manufacture of gas), and that a team had never before been known to go upon the ground at the place where the injury to plaintiff's horse occurred.

The testimony of the defendant also tended to show that the break in the pipe at that place was unknown to the superintendent at the works, or to any of the other employés of the defendant, at the time the injury occurred.

The plaintiff's testimony of knowledge on the part of the defendant was to the effect that other persons had seen steam, on several different occasions previous to the accident, issuing from the ground at different places along the line of the pipe that was broken, and one witness testified that he once saw it issuing from the place where the horse was injured; and it was claimed that the superintendent should have seen it. Whatever may be thought of the competency of the testimony, for the purpose offered, of seeing steam issue from the place where the horse was injured, certainly the testimony of that observed at other places from that where the injury

occurred, and at different times, was incompetent and irrelevant, and was erroneously received.

It appears from the undisputed testimony that the plaintiff had taken on his load of coke, and left the premises of the defendant, and when he brought his horse back upon them it was not for any business that he had with the defendant, but for the purpose of taking another way to avoid the cars, at which his horse took fright. The defendant could not be expected to provide against injury to the plaintiff's horse in its frenzied perambulations upon her premises, outside of the usual and ordinary avenues provided for the public having business on defendant's premises at the gas works. And in this connection the defendant's third request, which was as follows, should have been given:

" The plaintiff was bound to leave defendant's premises by the usual, ordinary, and customary way in which the premises are and have been departed from, provided the same be safe and in good condition; and if for his own convenience, or other reason (than defect in the usual place of departure), he leaves such way, he becomes at best a licensee, and cannot recover for injuries from a defect outside of said way, unless it was substantially adjacent to such way, and in this case the defect was not so adjacent."

There is no question upon the record but that the tracks of defendant upon her premises were in good condition and safe, and the alleged place of danger cannot be said to be so near the track as to be dangerous. It was at least 25 feet from the track. The cases cited by counsel for defendant upon this point fully sustain his position. See, also, *Early v. Railway Co.*, 66 Mich. 349.

The failure to give this request was error.

The following three requests should also have been given, but were refused, viz. :

" 1. The undisputed evidence shows that there were two well-defined roadways or paths leading from the place where plaintiff rightfully was, viz., where the coke was delivered, to the road, which were safe, free from defects or obstructions,

and which were always used by persons coming to or going from defendant's premises.

"2. In this case, defendant could not reasonably suppose that her premises would be used, as 'to ingress and egress, in any other manner than the usual, ordinary, and customary way, viz., over the ways that were well defined, from constant usage, for such ingress and egress.

"3. The defendant was under no obligation to render her premises safe for any purpose for which she could not reasonably anticipate the same to be used."

Under the circumstances of this case, these requests were proper and necessary to be given, in order to secure justice between these parties before the jury, and we find them nowhere given in the charge of the court.

It is unnecessary to consider the case further. Perhaps we ought to say, however, that it was not necessary for the defendant to fence her premises to prevent such accidents as this.

Persons engaged in a manufacturing business must be allowed to use their premises for that purpose in such manner as they may choose, so long as that management is not dangerous to the ordinary use by the public having business with the manufacturer, or to the employés.

For the errors herein noted the judgment must be reversed, and a new trial granted.

The other Justices concurred.