YOUNG, C.J.
Michigan, being above the 42nd parallel of north latitude, is prone to winter. And with winter comes snow and ice accumulations on sidewalks, parking lots, roads, and other outdoor surfaces. Unfortunately, the accumulation of snow, ice, and other slippery hazards on surfaces regularly traversed by the citizens of this state results in innumerable mishaps and injuries each year. This case tests the extent of a premises owner’s liability for one of those winter-related accidents. In this case, plaintiff recognized the danger posed by ice on a sidewalk, yet chose to confront the hazard in an ultimately unsuccessful effort to enter the premises. Plaintiff claims that the premises’ owners *455 should be liable for her injuries, while the premises’ owners argue that they are not liable because plaintiff s accident occurred as the result of an ordinary, open and obvious condition.
In many regards, this case is unremarkable both in its simplicity and its frequent occurrence in Michigan. Yet there has been some confusion surrounding the application of the open and obvious doctrine to wintry conditions. In Michigan, a premises possessor owes a duty to use reasonable care to protect invitees from an unreasonable risk of harm caused by dangerous conditions on the premises, including snow and ice conditions. However, liability does not arise for open and obvious dangers unless special aspects of a condition make even an open and obvious risk unreasonably dangerous. This may include situations in which it is “effectively unavoidable” for an invitee to avoid the hazard posed by such an inherently dangerous condition.
We reject plaintiffs argument that the hazard in this case was effectively unavoidable because plaintiff had a business interest in entering the premises. Neither the caselaw of this state nor the principles underlying the well-established “open and obvious” doctrine support plaintiffs theory of an expanded “business invitee” exception to the open and obvious doctrine, whereby invitees frequenting a business open to the public have an unassailable right to sue in tort for injuries caused by open and obvious conditions. Instead, longstanding principles governing the law of premises liability apply with their traditional force to this case, and exceptions to the open and obvious doctrine are, and are intended to be, limited. The touchstone of the “special aspects” analysis is that the condition must be characterized by its unreasonable risk of harm. Thus, an “unreasonably dangerous” hazard must be just that — not just a dan *456 gerous hazard, but one that is unreasonably so. And it must be more than theoretically or retrospectively dangerous. Similarly, an “effectively unavoidable” condition must be an inherently dangerous hazard that a person is inescapably required to confront under the circumstances. In this case, the fact that plaintiff, a business invitee, had a contractual right to enter the premises does not mean that she was unavoidably compelled to confront the icy condition.
We reverse in part the judgment of the Court of Appeals and remand this case to the circuit court for entry of summary disposition in favor of defendants Richard and Lori Lanctoe. The ice on the sidewalk was open and obvious, and plaintiff has not provided evidence of special aspects of the condition that justify imposing liability on the Lanctoes despite the open and obvious nature of the danger.
I. FACTS AND PROCEDURAL HISTORY
Plaintiff Charlotte Hoffner had a paid membership to a fitness center, Fitness Xpress, one of several tenants located in a commercial building in Ironwood, Michigan.[1] There is only one entrance to Fitness Xpress, which is serviced by a sidewalk that runs along the length of the building and connects the building to its parking lot. The building, sidewalk, and parking lot are all owned and maintained by defendants Richard and Lori Lanctoe. Under the lease agreements between the building’s business tenants and the Lanctoes, the Lanctoes are responsible for snow removal from the parking lot and sidewalk, although some tenants occasionally salt the sidewalk in front of the building.
*457 At around 11:00 a.m. on January 28, 2006, plaintiff drove to the building with the intent to exercise. Although the Lanctoes had already cleared and salted the parking lot and sidewalk earlier that day, by the time plaintiff arrived she observed that the sidewalk was icy at the entrance to Fitness Xpress. Plaintiff stated that she could “see the ice and the roof was dripping.” Notwithstanding her awareness of the conditions, plaintiff formed the opinion that the ice “didn’t look like it would be that bad” and decided to enter the building. As plaintiff explained, “it was only just a few steps,” and “I thought that I could make it.” Unfortunately, she fell on the ice, injuring her back.
Plaintiff subsequently brought the instant premises liability suit against the Lanctoes, as well as Fitness Xpress and its owners and operator. All defendants moved for summary disposition. Relevant here, defendants argued that plaintiff was barred from pursuing her claim of premises liability because of the open and obvious doctrine, given that the ice was plainly visible, which she recognized before confronting it. The Gogebic Circuit Court denied all of the defendants’ motions for summary disposition, reasoning that there was a question of fact regarding whether the icy hazard was “effectively unavoidable” in part because a jury could find that plaintiff had a right to access the building to get value for her membership. The circuit court explained, “So with one entrance, and the fact that [plaintiff] not only had a good reason to go in there, had business to go in there, contractually [plaintiff] had an interest in the activities and equipment that were inside there.”
Defendants sought leave to appeal, and the Court of Appeals unanimously affirmed in part and reversed in *458 part.[2] The Court reversed the trial court’s ruling with regard to Fitness Xpress and its owners, holding that they were entitled to summary disposition because they did not have possession and control of the sidewalk where the slip and fall occurred. However, the Court affirmed with regard to the trial court’s ruling that the open and obvious doctrine does not bar plaintiffs claims against the premises’ owners, the Lanctoes, because the dangerous condition was effectively unavoidable. Similar to the reasoning employed by the circuit court, the Court of Appeals reasoned that
Hoffner had contracted to use Fitness Xpress and may have needed to use it for health reasons. Because there was only one customer entrance to the facility that was fronted by the icy sidewalk, ‘the objective nature of the condition of the premises at issue’ reveals that the icy sidewalk was effectively unavoidable as it related to the use of the premises.[3]
In short, the panel believed that because there did not exist an alternative route by which Hoffner, as an invitee with a contractual right to use the facility, could enter the building, the open and obvious doctrine did not serve as a bar to plaintiffs claim.
The Lanctoes filed an application for leave to appeal in this Court, and we directed the clerk to schedule arguments on whether to grant the application for leave to appeal or take other action.[4]
II. STANDARD OF REVIEW
The circuit court denied the Lanctoes’ motion for summary disposition pursuant to MCR 2.116(C)(10), *459 which the Court of Appeals affirmed. A motion made under MCR 2.116(C)(10) tests the factual sufficiency of a claim, and when the proffered evidence fails to establish a genuine issue of material fact, the moving party is entitled to judgment as a matter of law. This Court reviews de novo the grant or denial of summary disposition.[5]
III. ANALYSIS
A. PRINCIPLES OF LAW
The law of premises liability in Michigan has its foundation in two general precepts. First, landowners must act in a reasonable manner to guard against harms that threaten the safety and security of those who enter their land.[6] Second, and as a corollary, landowners are not insurers; that is, they are not charged with guaranteeing the safety of every person who comes onto their land.[7] These principles have been used to establish well-recognized rules governing the rights and responsibilities of both landowners and those who enter their land. Underlying all these principles and rules is the requirement that both the possessors of land and those who come onto it exercise common sense and prudent judgment when confronting hazards on the land. These rules balance a possessor’s ability to exercise control over the premises with the invitees’ *460 obligation to assume personal responsibility to protect themselves from apparent dangers.
The starting point for any discussion of the rules governing premises liability law is establishing what duty a premises possessor owes to those who come onto his land. With regard to invitees,[8] a landowner owes a duty to use reasonable care to protect invitees from unreasonable risks of harm posed by dangerous conditions on the owner’s land.[9] Michigan law provides liability for a breach of this duty of ordinary care when the premises possessor knows or should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect.[10]
Perfection is neither practicable nor required by the law, and “[u]nder ordinary circumstances, the overriding public policy of encouraging people to take reasonable care for their own safety precludes imposing a duty on the possessor of land to make ordinary [conditions] ‘foolproof.’ ”[11] Thus, an integral component of the duty owed to an invitee considers whether a defect is “open and obvious.”[12] The possessor of land “owes no duty to protect or warn” of dangers that are open and obvious *461 because such dangers, by their nature, apprise an invitee of the potential hazard, which the invitee may then take reasonable measures to avoid.[13] Whether a danger is open and obvious depends on whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection.[14] This is an objective standard, calling for an examination of “the objective nature of the condition of the premises at issue.”[15]
Yet, as a limited exception to the circumscribed duty owed for open and obvious hazards, liability may arise when special aspects of a condition make even an open and obvious risk unreasonable. When such special aspects exist, a premises possessor must take reasonable steps to protect an invitee from that unreasonable risk of harm.[16] We explained in Lugo v Ameritech Corp, Inc, how to approach whether special aspects exist in a particular case:
In considering whether a condition presents such a uniquely dangerous potential for severe harm as to constitute a “special aspect” and to avoid barring liability in the ordinary manner of an open and obvious danger, it is important to maintain the proper perspective, which is to consider the risk posed by the condition a priori, that is, before the incident involved in a particular case. It would, for example, be inappropriate to conclude in a retrospective *462 fashion that merely because a particular plaintiff, in fact, suffered harm or even severe harm, that the condition at issue in a case posed a uniquely high risk of severe harm. This is because a plaintiff may suffer a more or less severe injury because of idiosyncratic reasons, such as having a particular susceptibility to injury or engaging in unforeseeable conduct, that are immaterial to whether an open and obvious danger is nevertheless unreasonably dangerous.... [The law] does not allow the imposition of liability merely because a particular open and obvious condition has some potential for severe harm. Obviously, the mere ability to imagine that a condition could result in severe harm under highly unlikely circumstances does not mean that such harm is reasonably foreseeable. However, we believe that it would be unreasonable for us to fail to recognize that unusual open and obvious conditions could exist that are unreasonably dangerous because they present an extremely high risk of severe harm to an invitee who fails to avoid the risk in circumstances where there is no sensible reason for such an inordinate risk of severe harm to be presented.[17]
It is worth noting Lugo’s emphasis on the narrow nature of the “special aspects” exception to the open and obvious doctrine. Under this limited exception, liability may be imposed only for an “unusual” open and obvious condition that is “unreasonably dangerous” because it “present[s] an extremely high risk of severe harm to an invitee” in circumstances where there is “no sensible reason for such an inordinate risk of severe harm to be presented.”[18] The touchstone of the duty imposed on a premises owner being reasonableness, this narrow “special aspects” exception recognizes there could exist a condition that presents a risk of harm that is so unreasonably high that its presence is inexcusable, even in light of its open and obvious nature.
*463 This Court has discussed two instances in which the special aspects of an open and obvious hazard could give rise to liability: when the danger is unreasonably dangerous or when the danger is effectively unavoidable. In either circumstance, such dangers are those that “give rise to a uniquely high likelihood of harm or severity of harm if the risk is not avoided”[19] and thus must be differentiated from those risks posed by ordinary conditions or typical open and obvious hazards. Further, we have recognized that neither a common condition nor an avoidable condition is uniquely dangerous.[20] Thus, when a plaintiff demonstrates that a special aspect exists or that there is a genuine issue of material fact regarding whether a special aspect exists, tort recovery may be permitted if the defendant breaches his duty of reasonable care. Again, as we explained in Lugo:
“[I]f the particular activity or condition creates a risk of harm only because the invitee does not discover the condition or realize its danger, then the open and obvious doctrine will cut off liability if the invitee should have discovered the condition and realized its danger. On the other hand, if the risk of harm remains unreasonable, despite its obviousness or despite knowledge of it by the invitee, then the circumstances may be such that the invitor is required to undertake reasonable precautions.”[21]
With specific regard to ice and snow cases, this Court has “rejected] the prominently cited notion that ice and snow hazards are obvious to all and therefore may *464 not give rise to liability” under any circumstances.[22] Rather, a premises owner has a duty to exercise reasonable care to diminish the hazards of ice and snow accumulation, requiring that “reasonable measures be taken within a reasonable time after an accumulation of ice and snow to diminish the hazard of injury to the invitee.”[23] However, it is also well established that wintry conditions, like any other condition on the premises, may be deemed open and obvious.[24] Michigan courts thus ask whether the individual circumstances, including the surrounding conditions, render a snow or ice condition open and obvious such that a reasonably prudent person would foresee the danger.[25] When a condition is deemed open and obvious, a premises owner’s duties are considerably narrowed. Thus, as with premises liability law generally, if the condition is open and obvious, a plaintiff who is injured by the condition may avoid summary disposition only if there are special aspects to the condition.[26]
*465 In this case, there is no dispute that the ice on which plaintiff fell was objectively open and obvious. Instead, the parties’ real dispute concerns whether that readily apparent ice patch was effectively unavoidable and thus constituted a special aspect. This Court has not specifically defined the scope of what constitutes an effectively unavoidable condition. In Lugo, we provided the following brief illustrative discussion of a hazard that could be considered effectively unavoidable:
An illustration of such a situation might involve, for example, a commercial building with only one exit for the general public where the floor is covered with standing water. While the condition is open and obvious, a customer wishing to exit the store must leave the store through the water. In other words, the open and obvious condition is effectively unavoidable.[27]
As with any special aspect, it is worth noting from the outset that our discussion in Lugo of an effectively unavoidable condition was set in the context of a condition that is inherently dangerous and thus poses a severe risk of harm.
The Court of Appeals has applied this unavoidability exception in several notable decisions. In Joyce v Rubin, the plaintiff fell on a snowy sidewalk when attempting to retrieve personal belongings from a private home. The plaintiff argued that the slippery condition was unavoidable because the homeowner had refused to provide a rug for traction and would not allow the plaintiff to enter the house through an alternative means. The Court of Appeals disagreed, holding that the exception for effectively unavoidable hazards did not apply because the plaintiff had a choice other than to confront the condition:
*466 Though Joyce says that she had no choice but to traverse the slippery walkway to the front door, she presents no evidence that the condition and surrounding circumstances would “give rise to a uniquely high likelihood of harm” or that it was an unavoidable risk. First, Joyce could have simply removed her personal items another day or advised [the defendant] Debra Rubin that, if Rubin did not allow her to use the garage door, she would have to move another day. Further, unlike the example in Lugo, Joyce was not effectively trapped inside a building so that she must encounter the open and obvious condition in order to get out. Joyce specifically testified that, after she slipped twice on the sidewalk, she walked around the regular pathway to avoid the slippery condition. Therefore, though this is a close case, Joyce’s own testimony established that she could have used an available, alternative route to avoid the snowy sidewalk. While Debra Rubin’s alleged refusal to place a rug on the sidewalk or allow access through the garage, if true, may have been inhospitable, no reasonable juror could conclude that the aspects of the condition were so unavoidable that Joyce was effectively forced to encounter the condition.[28]
In Corey v Davenport College of Business (On Remand), the plaintiff fell on icy steps outside a college dormitory. The Court of Appeals affirmed the trial court’s dismissal of the action, ruling that the steps were not unavoidable because the plaintiff had a choice whether to confront the condition:
In applying Lugo and Joyce to the present case, we conclude that the slippery steps at issue here were not only an open and obvious condition but also there are no “special aspects” of the steps that create a “uniquely high likelihood of harm or severity of harm” if the risk is not avoided or serve to remove that condition from the open and obvious danger doctrine. Plaintiff here testified that although he saw the steps and their condition and knew *467 that there was an alternate route into the building that was close by, he nonetheless attempted to use them.[29]
Finally, the Court in Robertson v Blue Water Oil Co[30] held that a condition was effectively unavoidable — a decision upon which plaintiff and the Court of Appeals below rely heavily. In Robertson, the plaintiff, a truck driver, visited the defendant’s gas station to buy fuel and windshield washer fluid in order to operate his truck during an extreme winter storm that was occurring at the time and had covered the area with a layer of ice. The plaintiff fell on his way into the station, and the Court of Appeals, in a split decision, held that there was a question of fact with regard to whether the open and obvious hazard was effectively unavoidable, distinguishing Joyce and Corey:
The record contains no evidence that there existed any available alternatives. Even if there were, the scope of the inquiry is limited to “the objective nature of the condition of the premises at issue.” Therefore, the only inquiry is whether the condition was effectively unavoidable on the premises. Here, there was clearly no alternative, ice-free path from the gasoline pumps to the service station, a fact of which defendant had been made aware several hours previously. The ice was effectively unavoidable.
Defendant argues that the ice was avoidable because plaintiff was not “effectively trapped.” Joyce v Rubin, 249 Mich App 231, 242; 642 NW2d 360 (2002). However, reliance on Joyce is misplaced for a number of reasons. Although we discussed the possibility that the plaintiff in Joyce could have gone to the premises on a different day, our holding was based on the plaintiffs own testimony that she was aware and, indeed, had made use, of an available alternative route. In any event, a reasonable trier of fact *468 could rationally find that plaintiff was “effectively trapped” because it would have been sufficiently unsafe, given the weather conditions, to drive away from the premises without windshield washer fluid.[31]
B. DISCUSSION AND APPLICATION
The “special aspects” exception to the open and obvious doctrine for hazards that are effectively unavoidable is a limited exception designed to avoid application of the open and obvious doctrine only when a person is subjected to an unreasonable risk of harm. Unavoidability is characterized by an inability to be avoided, an inescapable result, or the inevitability of a given outcome.[32] Our discussion of unavoidability in Lugo was tempered by the use of the word “effectively,” thus providing that a hazard must be unavoidable or inescapable in effect or for all practical purposes. Ac *469 cordingly, the standard for “effective unavoidability” is that a person, for all practical purposes, must be required or compelled to confront a dangerous hazard. As a parallel conclusion, situations in which a person has a choice whether to confront a hazard cannot truly be unavoidable, or even effectively so.
Plaintiff argues here that the ice that caused her harm was effectively unavoidable and, thus, constituted a special aspect, because she had a contractual right to enter Fitness Xpress as a paid member. The lower courts similarly held that the contractual relationship constituted a business interest, thereby qualifying plaintiff as an invitee, and thus “it would be disingenuous to relieve defendants of their duty of care.”[33] Accordingly, because no alternative route existed, reasoned the Court of Appeals, “the icy sidewalk was effectively unavoidable as it related to the use of the premises.”[34]
We reject these conclusions permitting recovery for a typical hazard confronted under ordinary circumstances as inconsistent with the law of this state regarding the duty owed to invitees and premises owners’ resultant liability for injuries sustained by invitees. The law of premises liability in Michigan provides that the duty owed to an invitee applies to any business invitee, regardless of whether a preexisting contractual or other relationship exists, and thus the open and obvious rules similarly apply with equal force to those invitees. This Court has stated that the crucial question when determining invitee status is the commercial nature of the relationship between the premises owner and the other party:
*470 [T]he imposition of additional expense and effort by the landowner, requiring the landowner to inspect the premises and make them safe for visitors, must be directly tied to the owner’s commercial business interests. It is the owner’s desire to foster a commercial advantage by inviting persons to visit the premises that justifies imposition of a higher duty. In short, we conclude that the prospect of pecuniary gain is a sort of quid pro quo for the higher duty of care owed to invitees. Thus, we hold that the owner’s reason for inviting persons onto the premises is the primary consideration when determining the visitor’s status: In order to establish invitee status, a plaintiff must show that the premises were held open for a commercial purpose.[35]
Perhaps what is most troubling regarding the theory of liability advanced by plaintiff is that it would result, if upheld, in an expansion of liability by imposing a new, greater duty than that already owed to invitees. By providing that a simple business interest is sufficient to constitute an unquestionable necessity to enter a business, thereby making any intermediate hazard “unavoidable,” plaintiffs proposed rule represents an unwarranted expansion of liability. It would, in effect, create a new subclass of invitees consisting of those who have a business or contractual relationship. Such a rule would transform the very limited exception for dangerous, effectively unavoidable conditions into a broad exception covering nearly all conditions existing on premises where business is conducted. Such a rule would completely redefine the duty owed to invitees, allowing the exception to swallow the rule. This proposed rule appears to be an erroneous extrapolation of the basic principle that invitees are owed a greater duty of care than licensees or trespassers. Simply put, Michi *471 gan caselaw does not support providing special protection to those invitees who have paid memberships or another existing relationship to the businesses or institutions that they frequent above and beyond that owed to any other type of invitee. Neither possessing a right to use services, nor an invitee’s subjective need or desire to use services, heightens a landowner’s duties to remove or warn of hazards or affects an invitee’s choice whether to confront an obvious hazard.[36] To conclude otherwise would impermissibly shift the focus from an objective examination of the premises to an examination of the subjective beliefs of the invitee.
The unreasonableness of a hazard remains the touchstone for permitting recovery under the “special aspects” exception to the open and obvious doctrine. For example, in Perkoviq v Delcor Homes-Lake Shore Pointe Ltd,[37] the plaintiffs employment in the construction business necessitated that he work around a slippery condition while preparing to paint a partially constructed home. Unfortunately, the plaintiff slipped on ice or frost; he pursued a premises liability claim against the general contractor. This Court unanimously concluded that the open and obvious doctrine barred recovery and that no special aspects existed with regard to a typical slippery condition occasioned by the presence of snow and ice. Relevant here, it cannot be said *472 that compulsion to confront a hazard by the requirement of employment is any less “avoidable” than the need to confront a hazard in order to enjoy the privileges provided by a contractual relationship, such as membership in a fitness club. Perkoviq illustrates that an overbroad understanding of effective unavoidability cannot undermine the historical parameters of the limited duty owed when the condition is open and obvious.
Thus, to the extent that Michigan courts in Robertson or otherwise alluded to a new breed of business invitee protection, we disavow that reasoning as inconsistent with traditional principles of premises liability law. Instead, when confronted with an issue concerning an open and obvious hazard, Michigan courts should hew closely to the principles previously discussed. It bears repeating that exceptions to the open and obvious doctrine are narrow and designed to permit liability for such dangers only in limited, extreme situations.[38] Thus, an “unreasonably dangerous” hazard must be just that — not just a dangerous hazard, but one that is unreasonably so. And it must be more than theoretically or retrospectively dangerous, because even the most unassuming situation can often be dangerous under the wrong set of circumstances.[39] An “effectively unavoidable” hazard must truly be, for all practical purposes, one that a person is required to confront under the circumstances. A general interest in using, or even a contractual right to use, a business’s services simply does not equate with a compulsion to confront a hazard *473 and does not rise to the level of a “special aspect” characterized by its unreasonable risk of harm.
Applying those principles here, we conclude that this case calls for little more than a simple application of the open and obvious doctrine to bar plaintiffs claim because plaintiff was injured as a result of an avoidable open and obvious danger and has provided no evidence of a special aspect to the condition that would justify the imposition of liability. Plaintiff observed the ice at the entrance to the fitness center,[40] which she desired to enter. Plaintiff freely admits that she knew that the ice posed a danger, but that she saw the danger as surmountable and the risk apparently worth assuming in order to take part in a recreational activity. Plaintiff was not forced to confront the risk, as even she admits; she was not “trapped” in the building or compelled by extenuating circumstances with no choice but to traverse a previously unknown risk. In other words, the danger was not unavoidable, or even effectively so.[41] Moreover, plaintiff presented no evidence that the risk of harm associated with the ice patch was so unreasonably high that its presence was inexcusable, even in light of its open and obvious nature. Again, landowners are not charged with a duty of ensuring absolutely the safety of each person who comes onto their land, even when that person is an invitee. Because there is no dispute that the ice constituted an open and obvious danger, and because plaintiff has not proved that the ice *474 patch had any special aspects, plaintiff is precluded from recovering in tort as a matter of law.
IV RESPONSE TO THE DISSENTS
The dissents take two separate approaches, but ultimately arrive at the same erroneous conclusion. Justice HATHAWAY’s dissent ignores this Court’s modern premises liability law entirely, concluding that mere anticipation of a harm is sufficient to impose liability on a premises owner. Justice CAVANAGH’s dissent recognizes this Court’s applicable jurisprudence regarding open and obvious dangers, but ultimately expresses his disagreement with that jurisprudence. We will address these approaches in turn.
We agree with Justice HATHAWAY’s general observation that anticipation of a perceived harm is material to the imposition of a duty of care given that, of course, the law does not impose liability for unanticipated or unforeseeable harms.[42] But contrary to Justice HATHAWAY’s position, it is not the only consideration relevant to the question whether a duty of care exists.[43] To support her view that mere anticipation of an injury creates, per se, a duty of care and a jury-submissible question of fact regarding liability for an open and obvious danger would be to render the open and obvious doctrine a legal nullity because harm can be anticipated *475 from any number of common conditions. Indeed, when could it ever be said that harm could not be reasonably anticipated from an open and obvious condition? Ordinary open and obvious conditions are categorically conditions from which harm may be anticipated — that is the characteristic that gives them their special designation in the law that has historically curtailed liability for injuries resulting from them.[44] The small patch of ice at issue here is of the same character as those open and obvious hazards — like an ordinary pothole or flight of stairs — that this Court has repeatedly stated do not give rise to liability for a premises owner.
Justice HATHAWAY’s dissent further argues, on the basis of its erroneous belief that this Court’s decision in Quinlivan v Great Atlantic and Pacific Tea Co, Inc controls the outcome of this case, that this opinion ignores precedent.[45] To the contrary, Quinlivan merely rejected a per se rule barring liability for snow and ice conditions, and the decision in this case does not affect that holding. The per se rule rejected by Quinlivan is markedly different from that of the open and obvious doctrine, which, while it restricts the duty owed for such hazards, nevertheless permits liability in certain limited circumstances. These limited circumstances have been discussed and delineated in decisions of this Court subsequent to Quinlivan. While Justice HATHAWAY apparently believes that the analysis in cases involving the open and obvious doctrine begins and ends with Quinlivan, this opinion has taken pains to set forth the cases and principles that have marked this Court’s *476 interpretation of the open and obvious doctrine and premises liability law before and in the nearly 40 years since Quinlivan. Quinlivan only established a duty of care for premises owners regarding winter conditions; our opinion in this case clarifies how well-recognized exceptions to the traditional duty of care imposed on premises owners apply in these circumstances. Yet in favor of its “anticipation” theory of liability, Justice Hathaway’s dissent ignores all this law, including this Court’s “special aspects” test, which is the test that governs whether liability may arise from an open and obvious danger and has uncontroversially been so for quite some time.
Justice HATHAWAY’s approach also fails to appreciate that whether a duty exists in a tort action is generally a question of law to be decided by the court,[46] and when a court determines that a duty was not owed, no jurysubmissible question exists. Because the issue of the openness and obviousness of a hazard is an “integral part” of the question of duty,[47] establishing whether a duty exists in light of the open and obvious nature of a hazard is an issue within the province of the court. As discussed previously, it is only when an open and obvious hazard is in some manner unreasonable that there is a question of fact for the jury.[48] And as this opinion explains, unreasonableness is the touchstone of *477 the “special aspects” test, which guides the analysis in this opinion. Again, though, because Justice HATHAWAY’s dissent ignores recent caselaw concerning the open and obvious doctrine and the “special aspects” analysis entirely, it erroneously concludes that there is a question of fact for the jury to decide in this case, even though the open and obvious doctrine cuts off liability as a matter of law. To the extent that her dissent abandons the controlling premises liability framework and wishes that a different analysis controlled, we believe that it is Justice HATHAWAY’s dissent, and not this opinion, that fails to consider Michigan law as set forth in our precedents.
Justice CAVANAGH’s dissent takes issue with this opinion’s application of the open and obvious doctrine in Michigan or, more specifically, it takes issue with how this doctrine has developed over time, culminating in this decision. While Justice CAVANAGH is entitled to disagree with the development of this area of the law, we believe that it offers necessary clarity and allows for the efficient resolution of this type of case by setting forth an objective and workable framework.
Contrary to Justice CAVANAGH’s charge, we respectfully disagree that this opinion renders Michigan law illogical or unworkable. Justice CAVANAGH’s dissent characterizes this decision as effectuating a sea-change because, he alleges, now an invitor’s duty only arises at the moment an individual is compelled to confront an unavoidable hazard, and thus the law “no longer requires the invitor to prospectively anticipate whether harm will occur, despite the hazard’s open and obvious nature.”[49] With all due respect, we believe that Justice CAVANAGH’s dissent misapprehends our holding. The “effectively unavoidable” compo *478 nent of the special aspects exception does not define a premises owner’s duty as a whole. Instead, it is but one component of that doctrine that serves as one exception to the general rule precluding liability for open and obvious dangers.[50] With this opinion, we do not broadly erase invitors’ duties or limit those duties to effectively unavoidable conditions, as Justice CAVANAGH’s dissent alleges. Instead, consistent with our caselaw, we simply apply the standing rule that liability may only be imposed on invitors for an open and obvious condition when there are special aspects to the condition.[51]
Both dissents also argue that this opinion is inconsistent with the Second Restatement of Torts. We begin with the general observation that this Court has never adopted wholesale the Restatement approach. While this Court has looked to the Restatement for guidance, it is our caselaw, as developed through the years, that *479 provides the rule of law for this State.[52] Nevertheless, it is for the precise reason that our caselaw, including Lugo and Bertrand v Alan Ford, Inc,[53] has relied on the principles of the Second Restatement of Torts, which this opinion then incorporates and applies, that ultimately belies the dissents’ argument that our opinion is inconsistent with the Second Restatement. Discussing the Second Restatement, this Court has summarized the guiding principles as follows:
When §§ 343 and 343A are read together, the rule generated is that if the particular activity or condition creates a risk of harm only because the invitee does not discover the condition or realize its danger, then the open and obvious doctrine will cut off liability if the invitee should have discovered the condition and realized its danger. On the other hand, if the risk of harm remains unreasonable, despite its obviousness or despite knowledge of it by the invitee, then the circumstances may be such that the invitor is required to undertake reasonable precautions. The issue then becomes the standard of care and is for the jury to decide.[54]
This standard — in particular, the focus on the imposition of liability only for unreasonable dangers — is perfectly consistent with our discussion and application of the special aspects test.[55] We have a difficult time reading the Second Restatement as standing for the *480 extraordinarily broad imposition of liability and legal propositions posited by the dissents.
In final response to the dissents, we believe it is again worth noting the key, undisputed facts of this case on which the dissents would impose potential liability on the premises owners. The facts of this case occurred in Michigan’s Upper Peninsula, in the dead of winter. On the morning of the accident, the premises owners had cleared and salted the sidewalk before the opening of business. However, by the time plaintiff arrived at the building later that morning, a small ice patch had re-formed over a portion of the sidewalk. We know from the testimony of plaintiff herself that this ice patch was not unreasonable or unusual in some manner because she believed that she could overcome it and affirmatively attempted to do so. There are no allegations in this case of anything other than what every Michigan citizen is compelled to confront countless times every winter.
While the dissents would like to characterize this opinion as closing the courthouse door on injured persons, we are only preserving the balance our law has struck with regard to liability for known, common, ordinary dangers. Contrary to the dissents’ arguments, the rationale for imposing liability here exists neither in the world of the Second Restatement nor in Michigan law. Instead, the dissents posit a regime whereby premises owners would become virtual insurers to those who enter their property. Were it to be adopted, the dissents’ position that they would leave the determination regarding the scope of the duty owed for an open and obvious danger as a question for the jury would significantly reduce predictability in the law. The process by which the dissents would resolve by jury trial every claim involving an open and obvious danger *481 would essentially render it impossible for any landowner to anticipate what harms must be remedied in advance in order to avoid liability.[56] The goal of the law is not to create uncertainty whereby only a jury determines, after the fact, the scope of a defendant’s duty. Rather, the goal of the law is to establish clear standards that allow citizens to ascertain the extent of their duties, liabilities, and responsibilities before an accident occurs. The open and obvious doctrine was created precisely to preclude suits in which the harm was obvious and should have been avoided.
V CONCLUSION
Our decision here reaffirms this Court’s interpretation of fundamental principles of the law of premises liability. These rules balance the competing interests of landowners and those who enter their land, ensuring that while no person should be forced to endure unreasonable risks, the simple fact exists that the law compels individuals to accept personal responsibility for their well-being by avoiding apparent hazards, including those precipitated by Michigan winters. The law does not provide recovery for every harm. The “special aspects” exception permits recovery only in circumstances that present a uniquely high likelihood of harm notwithstanding a hazard’s obvious nature.
The ice patch on the sidewalk that plaintiff chose to confront was open and obvious, and plaintiff has not *482 provided evidence of special aspects of the condition to justify imposing liability on defendants despite the open and obvious nature of the danger. The judgment of the Court of Appeals is reversed in part, and this case is remanded to the Gogebic Circuit Court for entry of summary disposition in favor of the Lanctoes.
Markman, Mary Beth Kelly, and Zahra, JJ., concurred with Young, C.J.

 References in this opinion to “plaintiff” are to Charlotte Hoffner and not to her medical insurer, Blue Cross Blue Shield of Michigan, which intervened as a party plaintiff.

 Hoffner v Lanctoe, 290 Mich App 449; 802 NW2d 648 (2010).

 Id. at 464 (citations omitted).

 Hoffner v Lanctoe, 489 Mich 877 (2011).

 Maiden v Rozwood, 461 Mich 109, 118, 120; 597 NW2d 817 (1999).

 See Bertrand v Alan Ford, Inc, 449 Mich 606, 609; 537 NW2d 185 (1995).

 See Lugo v Ameritech Corp, Inc, 464 Mich 512, 517; 629 NW2d 384 (2001); Bradley v Burdick Hotel Co, 306 Mich 600, 604; 11 NW2d 257 (1943); accord Dascola v YMCA of Lansing, 490 Mich 899 (2011) (Young, C.J., concurring) (“It is axiomatic in Michigan law that a premises owner is not an absolute insurer against every conceivable harm that may occur on his premises.”).

 The duty of care owed hy a premises possessor will, of course, depend on whether a plaintiff is an invitee, a licensee, or a trespasser. See generally Stitt v Holland Abundant Life Fellowship, 462 Mich 591, 596-598; 614 NW2d 88 (2000). In this case, it is undisputed that plaintiff was an invitee — the class to whom the premises owner owes the greatest duty of care.

 Williams v Cunningham Drug Stores, Inc, 429 Mich 495, 499; 418 NW2d 381 (1988), citing 2 Restatement Torts, 2d, § 343, pp 215-216.

 Bertrand, 449 Mich at 609; Samuelson v Cleveland Iron Mining Co, 49 Mich 164, 170; 13 NW 499 (1882).

 Bertrand, 449 Mich at 616-617.

 Lugo, 464 Mich at 516. When no material issues of fact exist, the existence of a legal duty is a question of law for the court to decide. See, e.g., Trager v Thor, 445 Mich 95; 516 NW2d 69 (1994).

 Riddle v McLouth Steel Prod Corp, 440 Mich 85, 96; 485 NW2d 676 (1992); accord Lugo, 464 Mich at 516; Bertrand, 449 Mich at 610-611.

 Joyce v Rubin, 249 Mich App 231, 238; 642 NW2d 360 (2002); Novotney v Burger King Corp (On Remand), 198 Mich App 470, 474-475; 499 NW2d 379 (1993).

 Lugo, 464 Mich at 523-524. The objective standard recognizes that a premises owner is not required to anticipate every harm that may arise as a result of the idiosyncratic characteristics of each person who may venture onto his land. This standard thus provides predictability in the law.

 Lugo, 464 Mich at 517; Bertrand, 449 Mich at 614.

 Lugo, 464 Mich at 518 n 2.

 Id. at 519 n 2.

 Id. at 519.

 Id. at 520 (“[Tlypical open and obvious dangers (such as ordinary-potholes in a parking lot) do not give rise to these special aspects.”); Corey v Davenport College of Business (On Remand), 251 Mich App 1, 8-9; 649 NW2d 392 (2002).

 Lugo, 464 Mich at 516-517, quoting Bertrand, 449 Mich at 611, citing and discussing 2 Restatement Torts, 2d, §§ 343 and 343A, pp 215-222.

 Quinlivan v Great Atlantic & Pacific Tea Co, Inc, 395 Mich 244, 261; 235 NW2d 732 (1975).

 Id.

 See Mann v Shusteric Enterprises, Inc, 470 Mich 320, 332-333; 683 NW2d 573 (2004); Perkoviq v Delcor Homes-Lake Shore Pointe, Ltd, 466 Mich 11; 643 NW2d 212 (2002). Quinlivan only established a duty of care for premises owners regarding snow and ice conditions. Yet, a landowner’s duty regarding these conditions as set forth and discussed in Quinlivan must be understood in light of this Court’s subsequent decisions in Bertrand and Lugo. See, e.g., Mann, 470 Mich at 333 n 13; Corey, 251 Mich App at 8-9. We thus take this opportunity to clarify how well-recognized exceptions to the traditional duty of care imposed on premises owners — namely, the open and obvious doctrine — apply in these circumstances.

 See, e.g., Janson v Sajewski Funeral Home, Inc, 486 Mich 934; 782 NW2d 201 (2010); Kenny v Kaatz Funeral Home, Inc, 472 Mich 929 (2005), rev’g 264 Mich App 99; 689 NW2d 737 (2004), for the reasons stated in Judge Geiffin’s dissenting opinion, 264 Mich App at 115-122; Ververis v Hartfield Lanes (On Remand), 271 Mich App 61; 718 NW2d 382 (2006).

 See, e.g., Corey, 251 Mich App at 8-9.

 Lugo, 464 Mich at 518.

 Joyce, 249 Mich App at 242-243.

 Corey, 251 Mich App at 6-7.

 Robertson v Blue Water Oil Co, 268 Mich App 588; 708 NW2d 749 (2005).

 Id. at 593-594 (citations omitted). The Robertson majority further commented on the fact that the plaintiff was a business invitee:
Finally, and more significantly, plaintiff was a paying customer who was on defendant’s premises for defendant’s commercial purposes, and thus he was an invitee of defendant. As our Supreme Court noted, “invitee status necessarily turns on the existence of an ‘invitation.’ ” Defendant’s contention that plaintiff should have gone elsewhere is simply inconsistent with defendant’s purpose in operating its gas station. The logical consequence of defendant’s argument would he the irrational conclusion that a business owner who invites customers onto its premises would never have any liability to those customers for hazardous conditions as long as the customers even technically had the option of declining the invitation. [Id. at 594 (citations omitted).]
The decision in Robertson was subject to a strong dissent, which would have held that the open and obvious doctrine applied because the conditions were not “effectively unavoidable.” See Robertson, 268 Mich App at 598-599 (Kelly, J., dissenting). For reasons stated herein, we reject the Robertson majority’s analysis of the “effectively unavoidable” doctrine.

 See, e.g., Random House Webster’s College Dictionary (1997).

 Hoffner, 290 Mich App at 464.

 Id.

 Stitt, 462 Mich at 604; see also Sink v Grand Trunk W R Co, 227 Mich 21; 198 NW 238 (1924).

 At oral argument, plaintiff engaged in an effort to limit this invitee subclass one step further to individuals engaged in activities designed to improve health. Plaintiff has cited no caselaw in support, and for good reason: there is even less support for such an idiosyncratic exception to the open and obvious doctrine than there is a lack of support for a general “business invitee” exception or “contractual right of use” exception to the open and obvious doctrine. We can discern no principled reason to begin subdividing premises liability law on the basis of how worthy a purpose we may subjectively believe an invitee had to frequent a business.

 Perkoviq, 466 Mich at 11.

 See Lugo, 464 Mich at 519 (“[0]nly those special aspects that give rise to a uniquely high likelihood of harm or severity of harm if the risk is not avoided will serve to remove that condition from the open and obvious danger doctrine.”).

 See id. at 518 n 2.

 While generally the standard applied to determine whether a condition is open and obvious is that of a reasonably prudent person, an objective standard, it is noteworthy in this case that plaintiff here actually (subjectively) recognized the hazard.

 It should not be difficult to see, particularly on the facts of a case such as this, how a conclusion to the contrary would all hut swallow the rule regarding open and obvious hazards.

 See generally Brown v Brown, 478 Mich 545; 739 NW2d 313 (2007).

 See Lugo, 464 Mich at 525 (“Simply put, there must be something out of the ordinary, in other words, special, about a particular open and obvious danger in order for a premises possessor to be expected to anticipate harm from that condition. Indeed, it seems obvious to us that if an open and obvious condition lacks some type of special aspect regarding the likelihood or severity of harm that it presents, it is not unreasonably dangerous. We cannot imagine an open and obvious condition that is unreasonably dangerous, but lacks special aspects making it so.”).

 See Williams, 429 Mich at 500 (“The duty a possessor of land owes his invitees is not absolute, however. It does not extend to conditions from which an unreasonable risk cannot be anticipated or to dangers so obvious and apparent that an invitee may be expected to discover them himself.”).

 Quinlivan, 395 Mich 244.

 Maiden, 461 Mich at 131; Murdock v Higgins, 454 Mich 46, 53; 559 NW2d 639 (1997)

 Lugo, 464 Mich at 516.

 See, e.g., id. at 517-518 (“[W]ith regard to open and obvious dangers, the critical question is whether there is evidence that creates a genuine issue of material fact regarding whether there are truly ‘special aspects’ of the open and obvious condition that differentiate the risk from typical open and obvious risks so as to create an unreasonable risk of harm, i.e., whether the ‘special aspect’ of the condition should prevail in imposing liability upon the defendant or the openness and obviousness of the condition should prevail in barring liability.”).

 Post at 488.

 Our opinion in this case focuses in large part on effective unavoidability only because plaintiff argues that it was the unavoidable nature of the hazard in this case that created a special aspect to the open and obvious condition.

 We decline to respond to the myriad hypothetical situations that Justice Cavanagh posits in which the rules articulated in this opinion may have some application in the future. Instead, we believe that we have clearly articulated the governing principles and applicable rules to guide future courts that will have to apply these principles and rules in what are, in some cases, admittedly difficult factual scenarios. As with any other principle or rule of the common law articulated in the previous 175 years of our state’s history, to the extent that the governing principles and applicable rules set forth in this case must be further refined or applied in future cases, we will confront those cases as they arise. In particular, however, because it is relevant to some of Justice CAVANAGH’s hypothetical situations, we reiterate that issues arising in application of the open and obvious doctrine are to be decided using an objective standard — as our rejection of plaintiff’s position and application of the standard in this case illustrates. See also Lugo, 464 Mich at 518, 523-524.

 No approach is perfect, and Justice Cavanagh himself has noted that the Restatement itself “does not explicitly lay out the standard of care,” Lugo, 464 Mich at 531 (Cavanagh, J., concurring), and that the Restatement’s approach “can be somewhat difficult to apply.” Id. at 533.

 Bertrand, 449 Mich 606.

 Id. at 611, citing and discussing 2 Restatement Torts, 2d, §§ 343 and 343A, pp 215-222.

 The Court’s opinion in Lugo, responding to Justice Cavanagh’s concurrence in that case raising the same basic challenge, reasoned similarly. See Lugo, 464 Mich at 525-526.

 The dissents would thus require a landowner either to keep his property in perfect condition at all times and for all people to ensure against any injury, or subject himself to protracted and expensive litigation as a result of injury arising from any common condition. We hardly believe that the dissents’ proposed Morton’s Fork represents a practical and workable framework, much less a framework compelled by our law.