# STATE OF MICHIGAN

# COURT OF APPEALS

GORDON JOSEPH BREDOW and SUZANNE
BREDOW,

FOR PUBLICATION
October 30, 2014

        Plaintiff-Appellant,

v

No. 315219
Kent Circuit Court
LC No. 11-011291-NO

LAND & CO., PRD CONSTRUCTION INC d/b/a
LAND SERVICE AND SUPPLY, WYOMING
INDUSTRIAL CENTER LLC, AND WYOMING
INDUSTRIAL CENTER II LLC,

        Defendants-Appellees.

Before: RONAYNE KRAUSE, P.J., and HOEKSTRA and WHITBECK, JJ.

RONAYNE KRAUSE, P.J. (*dissenting*)

I respectfully dissent because I cannot agree with the majority's conclusion that plaintiff lost his invitee status merely because he departed from his formal job responsibilities and because I believe the trial court erred by failing to consider whether the hazard that injured plaintiff was unreasonably dangerous.

As the majority notes, the parties have at no time contested plaintiff's status as an invitee on defendants' premises. I agree with the majority that the courts are not obligated to comply with parties' stipulations or statements of law. *Marbury v Madison*, 5 US (1 Cranch) 137, 177; 2 L Ed 60 (1803); *Rice v Ruddiman*, 10 Mich 125, 138 (1862); *In re Finlay Estate*, 430 Mich 590, 595-596; 424 NW2d 272 (1988). Of course, the parties themselves *are* bound to their own stipulations, whether to facts or to law, and may not subsequently raise them as errors on appeal. *Chapdelaine v Sochocki*, 247 Mich App 167, 177; 635 NW2d 339 (2001). Nonetheless, I agree with the majority that the parties appear to have been acting under an assumption, rather than a formal stipulation, that plaintiff was an invitee at the time of his injury. See *Ortega v Lenderink*, 382 Mich 218, 222-223; 169 NW2d 470 (1969). It is not improper for this Court to correct a

misapprehension of law under which the parties before it may be operating, I disagree that any such misapprehension existed here.[1]

I further agree with the majority's recitation of the general law governing the standard of care owed by landlords to various classes of individuals on the land and the general definitions of licensees and invitees. We all agree at least that plaintiff was an invitee when he initially entered upon defendant's premises. I take no exception to the general principle that an invitee *can* outstay his or her welcome on any given premises and thereby become a licensee or trespasser. However, I do not conclude that plaintiff did so here. The majority cites a number of cases in which invitees became mere licensees or trespassers, but all of those cases have one curious factual commonality: the plaintiffs all either did something they were not allowed to do or went somewhere they were not allowed to go. *Bedel v Berkey*, 76 Mich 435, 439-440; 43 NW 308 (1889); *Bennett v Butterfield*, 112 Mich 96, 96-97; 70 NW 410 (1897); *Hutchinson v Cleveland-Cliffs Iron Co*, 141 Mich 346, 347-349; 104 NW 698 (1905). It makes obvious sense for an invitee to forfeit that status upon violating stated or readily apparent limitations on the scope of their invitation. I find nothing in the record indicating that plaintiff was told or should have been aware that he was not allowed to use the door or clear the access to the door.

The majority further asserts that an invitee must make use of the premises in "the usual, ordinary, and customary way" to maintain his or her status as an invitee, in reliance on *Armstrong v Medbury*, 67 Mich 250; 34 NW 566 (1887) and an agglomeration of cases from outside of Michigan.[2] The words do appear in *Armstrong*, but in full context, the Court approved of a jury instruction to have been given in its entirety as follows:

---

[1] Similarly, I note that plaintiff never formally conceded that this action sounds in premises liability, but I agree entirely with the majority and the trial court that it does.

[2] Even if the out of state cases were binding, they do not even support the majority's conclusions. Briefly: in *Bird v Clover Leaf-Harris Dairy*, 102 Utah 330; 125 P2d 797 (1942), the plaintiff parked a car in a location that was actually and readily apparently impermissible; in *St Mary's Med Ctr of Evansville, Inc v Loomis*, 783 NE2d 274, 282 (Ind Ct App, 2002), the plaintiff, who was not an employee, entered a room clearly marked "employees only" but nevertheless *retained* his invitee status because similar employees regularly entered that room; in *Hogate v America Golf Corp*, 97 SW3d 44, 48 (Mo Ct App, 2002), the plaintiff lost any invitee status by riding a bicycle onto premises that did not permit bicycling; in *Gavin v O'Connor*, 99 NJL 162, 163-166; 122 A 842 (1923), the plaintiff lost any invitee status by using a clothes line for the purpose of swinging on it, contrary to its obvious intended purpose; in *Brunengraber v Firestone Tire & Rubber Co*, 214 F Supp 420, 423 (SDNY, 1963), the plaintiff was an invitee when he entered into an area customers such as himself were not to enter because defendant's manager requested he do so, but he lost that status by remaining in the area beyond the scope of the request; in *Sims v Giles*, 343 SC 708, 733; 541 SE2d 857 (2001), the court discussed a worker who lost his invitee status on the premises by leaving the location where he was supposed to be working; in *Barry v S Pac Co*, 64 Ariz 116, 122; 166 P2d 825 (1946), an intoxicated and unconscious individual using a railroad to sleep was a trespasser notwithstanding whatever pedestrian use

-2-

> The plaintiff was bound to leave defendant's premises by the usual, ordinary, and customary way in which the premises are and have been departed from, provided the same be safe and in good condition; and if for his own convenience, or other reason (than defect in the usual place of departure), he leaves such way, he becomes at best a licensee, and cannot recover for injuries from a defect outside of said way, unless it was substantially adjacent to such way, and in this case the defect was not so adjacent. [(*Armstrong*, 67 Mich at 253).]

Incredibly, the situation at bar is the opposite: plaintiff *was* in fact attempting to depart from the premises in the normal and customary manner, but was impeded by an alleged defect *within* that way and was—albeit perhaps arguably incautiously—attempting to rectify the defect. Again, plaintiff may not be able to recover for his injuries, but the fact that he was attempting to remove what he apparently believed to be a hazard to his transit hardly seems like a frolic and detour.

The majority also takes out of context a quotation from *Buhalis v Trinity Continuing Care*, 296 Mich App 685, 697; 822 NW2d 254 (2012), regarding persons straying from obvious paths of safety; in that case, this Court never held that the plaintiff ceased to be an invitee, but rather that the defendant had satisfied the duty of care under the circumstances of the case. Again, plaintiff was merely trying to go home via the normal and customary route that all such employees were expected to, and did, take.[3] Likewise, the fact that plaintiff was doing something unnecessary to his job makes him no different from, say, any employee cleaning the snow off his or her car in an employer's parking lot after work in order to go home. If such an employee were to slip and fall on ice while doing so, it is of course highly unlikely that the employee could recover in Michigan. However, that preclusion would not be because the employee had ceased engaging in acts that directly benefitted the employer and was instead attempting to leave the premises, but rather due to a probable preclusive application of open and obvious doctrine.

I find the majority's expansion of the rules governing the loss of invitee status grossly unwarranted and inappropriate. Plaintiff was apparently just trying to go home and make the way to doing so safe. Furthermore, there was evidence that he did so pursuant to expectations from his employer. He did nothing and went nowhere that was implicitly or explicitly disallowed by the premises owner. Finding that he lost his status as an invitee under the

---

might ordinarily be made of the railroad's right-of-way; and in *Page v Town of Newbury*, 113 Vt 336, 340; 34 A2d 218 (1943), as the majority notes, the Court explained that "one entering may become a trespasser by committing active and positive acts not included in the terms of his license or authority to enter . . . " In other words, all of these cases continue to stand merely for the reasonable proposition that an invitee may lose that status by doing something explicitly or implicitly *impermissible* on the premises.

[3] As I will discuss, a safer route existed that plaintiff could have taken, which has implications pursuant to open and obvious doctrine. However, that alternate route was neither expected nor normal for employees to take. The majority and I disagree about the extent to which the record evidence shows plaintiff's expected and normal egress from the building to have been safe.

circumstances works an unprecedented and unsupported restriction on the nature of what constitutes an invitee.

Further, punishing an employee for attempting to abate a danger at his workplace is bad public policy. Here, plaintiff was attempting to remove a potential injurious hazard from the main entrance of his workplace to allow for fellow employees or other invitees to enter or exit without the risk of harm. This is not a situation in which an individual willingly puts himself in harm's way by attempting to aid another on land over which he has no ownership or responsibility. Here, plaintiff was at work and attempted to protect not only himself, but also his workplace, fellow employees, and any other invitees. While an employee should not attempt to remedy any hazard, such as the hypothetical pit in *Lugo*, other conditions, such as snow and ice accumulation in Michigan, are common. It would be unreasonable to punish an employee if he got to work first and decided to shovel the sidewalk. If the employee is not allowed to act upon his desire to protect others, then a potential hazard remains on the land which could cause injuries to people and a lawsuit for the employer. Determining that, regardless of the reason, any employee must be punished for attempting to remedy any potential hazard at his workplace, which consequently deters employees from removing those hazards, creates greater dangers for invitees and the employer, and therefore is bad public policy.

Consequently, defendants are required to make reasonable efforts to protect the safety of those on the property, although not to the extent of guaranteeing that safety. *Hoffner v Lanctoe*, 492 Mich 450, 459; 821 NW2d 88 (2012). However, any hazard that is "open and obvious," meaning "it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection," is generally left to the invitee to avoid on his or her own and is not part of the landowner's duty. *Id*. at 460-461. Such open and obvious dangers may impose a duty on the landowner if "special aspects" exist. *Id*. at 462. Whether a danger is open and obvious is an objective analysis and based on the objective condition of the property. *Id*. at 461.

Our Supreme Court has held that any icy roof in the winter posed an open and obvious danger because anyone *on* the roof would immediately be aware that an icy roof is slippery. *Perkoviq v Delcore Homes-Lake Shore Pointe*, *Ltd*, 466 Mich 11, 16-18; 643 NW2d 212 (2002). Because the Court focused on the "slippery condition of the roof," *id*. at 18-19, *Perkoviq* is just another slip-and-fall case, remarkable because of the unusual surface involved, however, irrelevant to the instant situation. It is, in fact, obvious that snow and ice on a sloped surface would pose a slip-and-fall hazard to a person traversing that surface. That does not, *ipso facto*, establish whether it is obviously dangerous to anyone not presently attempting to navigate the surface. Although I tend to agree with defendants that any Michigan resident would be aware that snow and ice tend to accumulate on roofs and along gutters, the dangerousness thereof is not necessarily so obvious. To the contrary, snow is generally regarded as soft and harmless, save perhaps the danger its weight might pose to the roof structure itself. Average Michigan residents of ordinary intelligence would be expected to appreciate that a twenty-foot icicle would be dangerous, but it was not the icicle here that injured plaintiff.

I would not hold that the danger of snow and ice falling from a rooftop and thereby causing injury is open and obvious *per se*. However, notwithstanding the fact that the standard for openness and obviousness is objective, it calls for consideration of what a reasonable person

would have been expected to discover on casual inspection *from the plaintiff's position*. *Slaughter v Blarney Castle Oil Co*, 281 Mich App 474, 479; 760 NW2d 287 (2008). In other words, it is not a purely academic inquiry, divorced from the unique context of any particular case.

The trial court, rather than engaging in a rote application of slip-and-fall cases to the instant situation, properly concluded that other objective circumstances present at the scene would have suggested to an average person of ordinary circumstances that the roof was actively dropping dangerous ice and snow onto the ground, so there was likely "more where that came from," and that anything else on the roof would likely be precarious. Consequently, it would be a matter of common knowledge that knocking down an icicle could destabilize any other accumulation present. The evidence of the large and heavy ice chunks on the ground would have suggested that there was indeed serious danger associated with being underneath the roof, in the path of more such debris. The question is a close one, but I believe the trial court correctly found that *in this particular case*, the danger was open and obvious.

Even if a hazard is open and obvious, a premises possessor may nevertheless owe a duty to an invitee to protect the invitee from "unreasonable" risks of harm. *Hoffner*, 492 Mich at 461. Such "special aspects" must be construed narrowly and will only be found under exceptional and extreme circumstances. *Id*. at 462. The two "special aspects" explicitly discussed by our Supreme Court are dangers that are "effectively unavoidable" or that "impose an unreasonably high risk of severe harm." *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 518; 629 NW2d 384 (2001). An example of the latter is "an unguarded thirty foot deep pit in the middle of a parking lot" that may be avoidable but "would present such a substantial risk of death or severe injury to one who fell in the pit that it would be unreasonably dangerous to maintain the condition, at least absent reasonable warnings or other remedial measures being taken." *Id*. Thus, the degree of potential harm alone "may, in some unusual circumstances, be the key factor that makes such a condition unreasonably dangerous." *Id*. at 518 n 2. However, courts should not find such extreme dangers merely because some severe harm is imaginable or because some severe harm actually occurred. *Id*.

Plaintiff argues that the trial court erred in finding that the danger of falling ice and snow here was not effectively unavoidable. I disagree. If a plaintiff has a choice to decline to confront the danger, it is not "effectively unavoidable." *Hoffner*, 492 Mich at 468-469. Plaintiff contends that he needed to clear the debris and icicle in order to exit the building. If plaintiff had, in fact, actually been trapped, the condition would essentially by definition be effectively unavoidable. *Id*. at 473. However, the evidence was that employees could have used an alternative door to the building; doing so would merely have been inconvenient and was contrary to their established and expected practice.[4] Consequently, the danger could not have been effectively unavoidable. Plaintiff makes much of the fact that he was attempting to abate a danger to others, but his

---

[4] It would appear that if plaintiff had in fact availed himself of the alternative, and ordinarily unused, egress from the building, the majority would find that he would have lost his invitee status in any event by departing from the normal and customary egress route.

motives, while noble, are simply not relevant to whether a condition is objectively effectively unavoidable.

Plaintiff also argues that the trial court erred in failing to find that the hazard was unreasonably dangerous. I agree that the trial court erred by failing to address the possibility. A situation that poses an "unreasonably high risk of severe harm" is an *alternative* "special aspect" to a situation that is "effectively unavoidable." The thirty-foot pit discussed by our Supreme Court in *Lugo* all but guarantees serious injury to anyone who falls into it and therefore constitutes as "special aspect" even if the pit is open and obvious. Defendants' argument that the situation could not possibly pose much of a risk of harm because no one had yet been harmed would belie the situation being open and obvious. Furthermore, it is a variant on the "*a priori*" argument rejected by our Supreme Court in *Lugo*: whether any sort of injury, severe or otherwise, *actually* occurred is of little relevance to the *degree* of potential danger. The absence of any special aspects found in *Perkoviq* is, again, irrelevant: the nature of the hazard posed by ice and snow accumulation on roof to a person on that roof is fundamentally different from the nature of that hazard posed to someone not on that roof.

As with the question of whether accumulated snow and ice on a roof is open and obvious, I would not hold that such accumulation is or is not unreasonably dangerous *per se*. The unique details of the specific situation are critical. In light of the trial court's failure to address this question, I would likewise decline to do so and instead remand for the parties to address this before the trial court. I would also decline to address defendants' alternative argument that plaintiff's injury is his own fault: defendants appear to have raised this for the first time on appeal, and I would leave it up to the parties to address on remand.

/s/ Amy Ronayne Krause

-6-