**Jozef DYBEK and Irena Dybek, Plaintiffs,**

v.

**FEDEX TRADE NETWORKS TRANSPORT & BROKERAGE, INC., Defendant.**

**Case No. 13–10627.**

United States District Court, E.D. Michigan, Southern Division.

Feb. 18, 2014.

George T. Fishback, Sachs Waldman, Detroit, MI, for Plaintiffs.

John L. Weston, Secrest, Wardle, Farmington Hills, MI, for Defendant.

### OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

DAVID M. LAWSON, District Judge.

Plaintiffs Jozef Dybek and his wife Irena, Canadian citizens, filed this slip-and-fall case against FedEx corporation, an American company, alleging negligence under a premises liability theory and nuisance. The accident occurred near the American–Canadian border crossing in Port Huron, Michigan. Michigan law governs. Defendant FedEx filed a motion for summary judgment contending that the snow-and-ice hazzard described by the plaintiff was open and obvious, and therefore the defendant had no duty to warn or make the premises safe. Dybek responded that special aspects of the hazzard made it effectively unavoidable, and therefore an exception to Michigan's open-and-obvious rule applies here. FedEx replies that the facts do not support that exception. The Court heard oral argument on the motion on February 13, 2014. The Court now finds that the plaintiffs have abandoned their nuisance claim, but fact questions that remain on the negligence claim preclude summary judgment.

According to the parties' submissions, plaintiffs Jozef Dybek and Irena Dybek are residents of Caledon, Ontario, Canada. Defendant FedEx Trade Networks Transport & Brokerage, Inc. is a corporation organized under New York law. On February 1, 2011, Mr. Dybek was employed by Concord Transportation as a truck driver and was assigned to deliver freight from Canada to Chicago. The plaintiff drove a tractor/trailer from Ontario, Canada across the Blue Water Bridge that connects Sarnia, Ontario with Port Huron, Michigan. After crossing the border, United States Customs' officials informed Mr. Dybek that part of the freight did not clear customs because he did not have the appropriate paperwork. Officials told Mr. Dybek that he was required to offload the part of the freight that did not have proper paperwork. In February 2011, Concord had a business relationship with FedEx that allowed Concord drivers to unload their cargo at a FedEx warehouse in nearby Kimball Township if the cargo did not clear customs. The arrangement enabled drivers to store the non-cleared freight in a secure warehouse until U.S. Customs officials received and processed the necessary paperwork. If the U.S. Customs officials allowed that accommodation, the driver was legally required to bring the non-cleared freight to the specified location.

After a portion of Mr. Dybek's freight did not clear U.S. Customs, a Concord dispatcher notified FedEx that a portion of Mr. Dybek's freight did not clear customs and arranged for Mr. Dybek to deliver the non-cleared freight to FedEx's warehouse in Kimball Township. Upon arrival at the FedEx facility, Mr. Dybek parked and walked to the FedEx shipping office with the paperwork from U.S. Customs. A FedEx employee told him to use the loading

dock bay to unload the freight. Although the path to the shipping office door was clear, Mr. Dybek observed that the entire loading dock in the back of the warehouse was covered with snow and ice. FedEx employees had not plowed or shoveled the loading dock area at all.

After Mr. Dybek backed his truck to the loading dock, a FedEx employee removed the uncleared freight while Mr. Dybek waited in the cab. Mr. Dybek then pulled away about ten feet from the dock, got out of the cab, and walked to the back of the trailer to close and seal the trailer's rear doors. After closing one door, Mr. Dybek slipped and fell while trying to close the second door. He suffered serious injuries as a result of the fall, including a skull fracture and subdural hematoma.

The plaintiffs filed a complaint in this Court on February 14, 2013, amended two weeks later, alleging negligence based on premises liability and nuisance. On March 21, 2013, the defendant filed a motion for summary judgment, which it withdrew on April 24, 2013. After discovery was completed, the defendant renewed its motion for summary judgment on October 29, 2013. The plaintiffs answered the motion and the defendant filed a reply.

## I.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Under Rule 56—the summary judgment rule—the party bringing the summary judgment motion has the initial burden of informing the court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.,* 276 F.3d 845, 848 (6th Cir.2002). If the party opposing the motion contends

facts are in dispute, he may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court then "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Hawkins v. Anheuser–Busch Inc.,* 517 F.3d 321, 332 (6th Cir.2008). "Summary judgment ... is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Hunt v. Cromartie,* 526 U.S. 541, 549, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson,* 477 U.S. at 242, 106 S.Ct. 2505).

This case is before the Court on the basis of diversity jurisdiction under 28 U.S.C. § 1332, and the plaintiffs' claims are based entirely on state law. Therefore, the Court must apply the law of the forum state's highest court. *Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). All agree that Michigan law applies to this dispute. If the state's highest court has not decided an issue, then "the federal court must ascertain the state law from 'all relevant data,'" *Garden City Osteopathic Hosp. v. HBE Corp.,* 55 F.3d 1126, 1130 (6th Cir.1995) (quoting *Bailey v. V. & O Press Co.,* 770 F.2d 601, 604 (6th Cir.1985)), which can include "the state's intermediate appellate court decisions, as well as the state supreme court's relevant *dicta,*" *Ososki v. St.*

*Paul Surplus Lines,* 156 F.Supp.2d 669, 674 (E.D.Mich.2001) (internal quotation marks and citation omitted).

Because winters in Michigan can be severe, and weather-related accidents are common, the state courts have devoted considerable attention to the duties of land owners to make their property safe for others, especially when ice and snow abound. There is, therefore, plenty of state authority to consult, which can be both a blessing and a curse: a blessing if one merely seeks a source of legal precedent; a curse if one attempts to discern some measure of consistency. In this case, the parties cite many of the same authorities to support their competing arguments, and they draw opposite conclusions from the language in the cases.

### A.

To begin, the defendant argues that the negligence count of the plaintiffs' first amended complaint (count I) should be dismissed because the conditions at FedEx's warehouse were open and obvious and because snow and ice do not give rise to a uniquely high likelihood of harm or severity of harm. The defendant also argues that the Court should dismiss the nuisance count (count II) because the plaintiff did not plead a cogent public or private nuisance claim. The defendant maintains that the plaintiffs have alleged a nuisance in order to try to overcome the barriers to their premises liability claim, namely, the open and obvious doctrine.

The plaintiffs have vigorously opposed the attack on their negligence claim, but they ignored the argument addressed to the nuisance count. "[A] plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Michigan, Inc.,* 545 Fed.Appx. 368, 372, 13–1054, 2013 WL 5583818, at *3 (6th Cir. Oct. 10, 2013) (citing cases). Because the plaintiffs have not contested summary judgment on their nuisance claim, either in their motion papers or at oral argument, the Court finds that they have abandoned that claim, and the defendant is entitled to summary judgment of dismissal of count II of the amended complaint.

### B.

The principal dispute concerns the premises liability claim. In order to establish a *prima facie* case of negligence under Michigan premises liability law, a plaintiff must prove: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages. *Schultz v. Consumers Power Co.,* 443 Mich. 445, 449, 506 N.W.2d 175 (1993). The duty a landowner owes an individual that enters her land depends upon whether that individual is a trespasser, licensee, or invitee. *Stitt v. Holland Abundant Life Fellowship,* 462 Mich. 591, 596–97, 614 N.W.2d 88, 91–92 (2000).

Neither party disputes that Mr. Dybek was an invitee on February 1, 2011 when he fell at the FedEx warehouse facility. "An invitee is one who enters the land of another for a commercial purpose on an invitation that carries with it an implication that reasonable care has been used to prepare the premises and to make them safe." *O'Donnell v. Garasic,* 259 Mich. App. 569, 573, 676 N.W.2d 213, 217 (2003). "In Michigan, a premises possessor owes a duty to use reasonable care to protect invitees from an unreasonable risk of harm caused by dangerous conditions on the premises, including snow and ice conditions." *Hoffner v. Lanctoe,* 492 Mich. 450, 455, 821 N.W.2d 88, 91 (2012).

Although FedEx concedes that the plaintiff was an invitee, FedEx believes that it did not owe Mr. Dybek a duty of reasonable care concerning the snow and

ice hazard because the conditions at the warehouse were open and obvious. "[W]hether a duty exists in a tort action is generally a question of law to be decided by the court, and when a court determines that a duty was not owed, no jury-submissible question exists." *Hoffner*, 492 Mich. at 476, 821 N.W.2d at 103. "The general rule is that a premises possessor is not required to protect an invitee from open and obvious dangers." *Lugo v. Ameritech Corp., Inc.*, 464 Mich. 512, 516, 629 N.W.2d 384, 386 (2001). Therefore, a Michigan landowner owes an invitee no duty to exercise reasonable care if the dangerous conditions are open and obvious. *Ibid.* "Whether a danger is open and obvious depends on whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection." *Hoffner*, 492 Mich. at 461, 821 N.W.2d at 94–95. "This is an *objective standard*, calling for an examination of the 'objective nature of the condition of the premises at issue.'" *Ibid.* (quoting *Lugo*, 464 Mich. at 523–24, 629 N.W.2d at 390).

▮ The plaintiffs do not appear to contest that the snow and ice conditions at the warehouse were open and obvious, and for good reason. Mr. Dybek testified that the surface of the warehouse grounds was "pure snow" and that he knew that snow could be "slippery" and "very dangerous." Def.'s Mot. Summ. J., Ex. B, Dybek dep., at 11. Instead, the plaintiffs argue that the snow and ice hazard falls under an exception to the open and obvious doctrine that says that "if special aspects of a condition make even an open and obvious risk unreasonably dangerous, the premises possessor has a duty to undertake reasonable precautions to protect invitees from that risk." *Lugo*, 464 Mich. at 517, 629 N.W.2d at 386.

▮ "[W]ith regard to open and obvious dangers, the critical question is whether there is evidence that creates a genuine issue of material fact regarding whether there are truly 'special aspects' of the open and obvious condition that differentiate the risk from typical open and obvious risks so as to create an unreasonable risk of harm. . . ." *Id.* at 517–18, 629 N.W.2d at 387. A special aspect is a condition of the hazard that is unusual in character, location, or surrounding circumstances. *Bertrand v. Alan Ford, Inc.*, 449 Mich. 606, 617, 537 N.W.2d 185 (1995). The essential inquiry is not whether the harm was foreseeable, but whether despite its foreseeability, the harm remained unreasonable. *Singerman v. Muni. Serv. Bureau, Inc.*, 455 Mich. 135, 142–43, 565 N.W.2d 383 (1997).

▮ There are at least two situations in which the special aspects of an open and obvious hazard could give rise to liability: when the hazard poses an unusually high risk of severe harm, and when the hazard is effectively unavoidable. *Lugo*, 464 Mich. at 518, 629 N.W.2d at 389. In evaluating whether a special aspect exists, courts must "focus on the objective nature of the condition of the premises at issue, not on the subjective degree of care used by the plaintiff." *Lugo*, 464 Mich. at 523–24, 629 N.W.2d at 390. Only the second situation is at play in this case.

FedEx argues that the Court need not determine whether a special aspect exists because *Hoffner* held that snow is not unreasonably hazardous *per se*. The Court does not read *Hoffner* to say that. In *Hoffner*, the Michigan Supreme Court rejected the "'notion that ice and snow hazards are obvious to all and therefore may not give rise to liability' under any circumstances." 492 Mich. at 463–64, 821 N.W.2d at 96. The *Hoffner* Court emphasized that courts should evaluate the "individual circumstances" to determine whether the open and obvious doctrine bars a

plaintiff's claim or whether special aspects exist that permit recovery. *Id.* at 464, 821 N.W.2d at 96.

FedEx also argues that the Court must examine whether the conditions are unreasonably dangerous as a threshold matter before considering whether a special aspect exists. That approach flies the arrow backward. The *Hoffner* court used the term "inherently dangerous" to describe a condition on land that amounts to a "hazard." The "special aspect" of that hazard made it "unreasonably dangerous" because it was "effectively unavoidable." *Id.* at 455, 821 N.W.2d at 91. Here is the court's explanation of its terminology:

> The touchstone of the 'special aspects' analysis is that the condition must be characterized by its *unreasonable risk of harm.* Thus, an 'unreasonably dangerous' hazard must be just that—not just a dangerous hazard, but one that is unreasonably so. And it must be more than theoretically or retrospectively dangerous. Similarly, an 'effectively unavoidable' condition must be an inherently dangerous hazard that a person is inescapably required to confront under the circumstances.

*Id.* at 455–56, 821 N.W.2d at 92. From that language, one must conclude that although a slippery surface is inherently dangerous to walk on (and therefore, a "hazard")—and one cannot deny with any sense of credibility that an icy surface is a hazard—it is not *unreasonably* dangerous if it is obvious and can be avoided. If it is not open and obvious, it is unreasonably dangerous. Likewise, if a "special aspect" of that hazard makes it unavoidable even if it is obvious, it is unreasonably dangerous.

The defendant draws on the quoted language to argue that whether snow and ice on a walking surface is an inherently dangerous condition is an inquiry distinct from whether special aspects exist. The defendant's argument, however, runs headlong

into *Lugo.* In that case, the Michigan Supreme Court rejected the defendant's very argument in its discussion of Justice Cavanagh's concurrence:

> As we understand it, Justice Cavanagh's basic position is that the inquiry into whether an open and obvious condition is unreasonably dangerous should not be focused on whether that condition involves special aspects that distinguish it from ordinary open and obvious conditions. We disagree because we believe that this 'special aspects' inquiry serves to concretely focus trial courts on the showing that must be made in evaluating motions for summary disposition in this context ... Simply put, there must be something out of the ordinary, in other words, special, about a particular open and obvious danger in order for a premises possessor to be expected to anticipate harm from that condition ... Because of the great variety of circumstances in which premises liability claims may be raised, it may be practically impossible to demarcate the extent of a premises possessor's duties with great precision. Nevertheless, we believe that our approach, focusing on the existence or absence of special aspects of an open and obvious danger, will guide the trial courts in considering whether particular open and obvious conditions posed an unreasonable risk of harm better than would be the case without this further exposition of the open and obvious doctrine.

*Lugo,* 464 Mich. at 524–26, 629 N.W.2d at 390–91. Contrary to the defendant's position, the *Lugo* Court makes clear that it is the special aspect that render conditions unreasonably dangerous. "Indeed, it seems obvious to us that if an open and obvious condition lacks some type of special aspect regarding the likelihood or severity of harm that it presents, it is not unreasonably dangerous. We cannot

imagine an open and obvious condition that is unreasonably dangerous, but lacks special aspects making it so." *Ibid.* The *Hoffner* Court did not overrule *Lugo* on this point or hold that the test for an unreasonably dangerous hazard is distinct from the special aspects test. *Hoffner*, 492 Mich. at 480, 821 N.W.2d at 105 ("[T]he focus on the imposition of liability only for unreasonable dangers ... is perfectly consistent with our discussion and application of the special aspects test."). Nor did that court hold that snowy and icy surfaces are not hazards.

The plaintiffs contend that there is a genuine issue of material fact as to whether the dangerous conditions were unavoidable. "Unavoidability is characterized by an *inability to be avoided*, an *inescapable* result, or the *inevitability* of a given outcome." *Hoffner*, 492 Mich. at 468, 821 N.W.2d at 99. The "standard for 'effective unavoidability' is that a person, for all practical purposes must be *required* or *compelled* to confront a dangerous hazard." *Id.* at 469, 821 N.W.2d at 99. "As a parallel conclusion, situations in which a person has a *choice* whether to confront a hazard cannot truly be unavoidable, or even effectively so." *Ibid.* In *Lugo*, the Michigan Supreme Court provided an example of a hazard that could be considered effectively unavoidable:

> An illustration of such a situation might involve, for example, a commercial building with only one exit for the general public where the floor is covered with standing water. While the condition is open and obvious, a customer wishing to exit the store must leave the store through the water. In other words, the open and obvious condition is effectively unavoidable.

464 Mich. at 518, 629 N.W.2d at 387.

The defendant disagrees that the plaintiff had no choice but to confront the dangerous conditions and argues that Mr. Dy-

bek's situation is similar to the facts in *Hoffner*. In *Hoffner*, the plaintiff owned a membership at a fitness center in Ironwood, Michigan. 492 Mich. 450, 455, 821 N.W.2d 88, 92. On January 28, 2006, she drove to the building with the intent to exercise, but observed that the only entrance to the gym was covered with ice. *Id.* at 457, 821 N.W.2d at 92. Notwithstanding her awareness of the conditions, the plaintiff decided to try to enter the gym, fell on the ice, and injured her back. *Ibid.* The court rejected the plaintiff's argument that the hazard was effectively unavoidable because the only entrance to the gym was covered in ice and she had a right to access the building to get value for her membership. *Id.* at 457, 821 N.W.2d at 93. The Court emphasized that the plaintiff was not forced to confront the hazard or trapped in the building, but instead made a choice to confront the risk. *Id.* at 473, 821 N.W.2d at 102.

*Hoffner* is distinguishable. Unlike the plaintiff in *Hoffner*, there is a genuine dispute as to whether Mr. Dybek for "all practical purposes" had no choice but to confront the hazard. As he explained:

> Q. When you were at customs at the border, did you have a choice about what you could do, or did you have to go to the FedEx warehouse to drop off the cargo that was not cleared?
>
> A. It was required. I[had] to leave that load....
>
> Q. So when you got to the FedEx warehouse, did you have any choice about turning around and leaving, or did you have to leave the load there and do what you did?
>
> A. I[had] to leave that load at FedEx, no choice.

Def.'s Mot. Summ. J., Ex. B, Dybek dep., at 72. Although the plaintiff in *Hoffner* voluntarily walked on the ice in front of the fitness center, U.S. Customs required

Mr. Dybek to unload the uncleared freight as a condition of entering the United States. Mr. Dybek could not unload the freight at any warehouse or storage facility: U.S. Customs required him to unload the freight at a secure facility that complied with U.S. Customs' regulations. The record contains no evidence of another U.S. Customs warehouse near the border at the time of the accident. But even if there were other facilities, once U.S. Customs approved the arrangement with FedEx, Mr. Dybek had no choice but to unload the freight at the FedEx warehouse facility.

> Q. And basically, if I understand the way this works, at that point the die is cast; in other words, once the driver proceeds away from Customs, it's too late to turn around and go back, he's made a commitment to bring the non-cleared freight here?
>
> A. That's correct.

Pls.' Response to Mot. Summ. J., Ex. D, Bowen dep., at 21. Thus, unlike the plaintiff in *Hoffner*, Mr. Dybek could not turn around and drop off the freight on another date or choose an alternate route. He was under a legal duty to unload the freight at FedEx.

The defendant also analogizes Mr. Dybek's situation to a number of unpublished Michigan Court of Appeals cases. Those cases highlight the extraordinary barriers that plaintiffs face avoiding summary judgment based on the open and obvious defense. For instance, in *Rogers v. Pontiac Ultimate Auto Wash, L.L.C.*, 308332, 2013 WL 951245 (Mich.Ct.App. Feb. 19, 2013), the Michigan Court of Appeals affirmed summary judgment after concluding that the hazard was not effectively unavoidable. The plaintiff slipped and fell on black ice at a car wash owned by the defendant. *Id.* at *1. Employees pushed in the plaintiff's mirrors before he entered the car wash. *Ibid.* Following the car wash, the plaintiff stepped out of the car to adjust his mirrors, slipped on black ice, and fell. *Ibid.* The court of appeals held that the hazard was not effectively unavoidable because the plaintiff could have driven away from the car wash before adjusting his mirrors or rolled down his windows to adjust his mirrors without exiting the vehicle at all. *Id.* at *3. The court emphasized that the plaintiff chose to encounter the hazard: he was not trapped in the carwash parking lot or forced to exit his vehicle and encounter the hazard. *Ibid.*

Similarly, in *Parker–Dupree v. Raleigh*, 310013, 2013 WL 3032256 (Mich.Ct.Ap. June 18, 2013), the court affirmed summary judgment for the defendant because there was no genuine issue of material fact that snowy conditions on the defendant's walkway were effectively unavoidable. The plaintiff, a mail carrier for the United States Postal Service, slipped and fell on snow and ice while delivering mail to the defendant's residence. *Id.* at *1. The court of appeals found that the accident was not effectively unavoidable because the plaintiff could have taken a different route that avoided the snow, stepped off the slippery pathway or informed her supervisor that the pathway was too slippery to deliver the mail. *Id.* at *2.

In *Koss v. A & A Transp. Servs., Inc.*, 269411, 2006 WL 2708676 (Mich.Ct.App. Sept. 21, 2006), the court found no special aspect to the ice hazard. The plaintiff worked as an independent contractor driving a taxicab for the defendant. *Id.* at *1. He slipped and fell on ice, injuring his scrotum and perineum, while walking to his parked car after checking for available work at the defendants' office. *Ibid.* The court of appeals emphasized that a number of alternatives were available to the defendant, including calling the office to inquire about the availability of work and parking in front of the building, which was less icy,

instead of the back of the building. *Id.* at *4.

■ These cases are severe, but they are distinguishable because there is a genuine dispute as to whether Mr. Dybek was under a legal duty to unload the freight at FedEx after leaving United States' Customs. An act is unavoidable if it is legally required and involuntary if done under legal compulsion. *See People to Use of Houghton v. Newberry,* 152 Mich. 292, 299, 116 N.W. 419, 421 (1908) (defining the term voluntary as that which is not required by law). FedEx argues that the plaintiff could have avoided the injury by deciding to move to a safer location. But Mr. Dybek's testified that the entire loading area was covered with ice and snow, which supports the factual dispute over whether such safer alternatives existed. The defendant also argues that the plaintiff could have turned around at the border and driven back to Canada. That argument makes little sense, because Mr. Dybek had no reason to anticipate at the border that FedEx would fail to shovel or salt the snow at its loading dock. Plaintiffs must act reasonably for their own safety, but the law does not require prescience. The defendant also contends that the plaintiff was not required to get out of the truck after the FedEx employees unloaded the uncleared freight and left the trailer door open. Here, too, there is a genuine dispute of material fact as to whether Mr. Dybek was required to leave the cab. The plaintiff testified that his employer's regulations prohibited him from driving with an open back door.

The defendant argues that Mr. Dybek could have requested someone from FedEx to apply salt before leaving the truck cab. But the Michigan Court of Appeals rejected this very argument in *Brousseau v. Daykin Elec. Corp.,* 225880, 2002 WL 1275500 (Mich.Ct.App. June 7, 2002), when it affirmed the trial court's denial of the defendant's motion for a directed verdict and new trial based on the open and obvious doctrine. In that case, the plaintiff, a truck driver, brought a premises liability claim after the plaintiff was injured when driving over a mound of snow blocking a loading dock. The court of appeals held that, although an open and obvious risk, a reasonable jury could conclude that the plaintiff had no choice but to drive over the mound. The defendant had argued that the mound was avoidable because the plaintiff could have called his employer or asked the defendant to have its employees remove the mound. The court noted that the hypothetical plaintiff in *Lugo* could have chosen to not exit the building and instead asked an employee to clean up the water. The court concluded that *Lugo's* example was utilized to emphasize that "there can be liability imposed upon premises owners when the *location* of the open and obvious condition and the circumstances of the plaintiff ... are such that the plaintiff effectively had no choice but to encounter the condition." *Id.* at *3 n. 4 (citing *Lugo,* 464 Mich. at 519 n. 2, 629 N.W.2d at 387 n. 2). Indeed, *Lugo* emphasized that courts must focus on the objective conditions of the premises, rather than the subjective degree of care used by the plaintiff. *Lugo,* 464 Mich. at 523, 629 N.W.2d at 390 (observing that where "special aspects of the situation that nevertheless made [an open and obvious hazard] unreasonably dangerous, ... the fact that the plaintiff was also negligent would not bar a cause of action"); *see also Clapper v. HVM, L.L.C.,* 06–10093, 2007 WL 436126, at *7 (E.D.Mich. Feb. 6, 2007) ("[Defendant's] speculative arguments regarding what it now believes Plaintiff should have done under these circumstances ... are misplaced. Under *Lugo,* the proper focus here is on the 'objective nature of the condition of the premises at issue, not on the subjective degree of care used by the

plaintiff.' ") (quoting *Lugo,* 464 Mich. at 524, 629 N.W.2d at 390). A genuine issue of material fact exists as to whether special factors existed to make FedEx's warehouse unreasonably dangerous. The defendant's motion for summary judgment as to the plaintiffs' premises liability claim must be denied.

## II.

The plaintiffs have abandoned their nuisance claim. However, fact issues preclude summary judgment for the defendant on the plaintiff's negligence claim.

Accordingly, it is **ORDERED** that the defendant's motion for summary judgment [dkt. # 27] is **GRANTED IN PART AND DENIED IN PART.**

It is further **ORDERED** that count II of the amended complaint alleging nuisance is **DISMISSED WITH PREJUDICE.**

It is further **ORDERED** that the motion is **DENIED** in all other respects.