NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0063n.06

No. 16-1002

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jan 25, 2017
DEBORAH S. HUNT, Clerk

CHADWICK DETRICK,                          )
                                           )
          Plaintiff-Appellant,             )
                                           )     ON APPEAL FROM THE
v.                                         )     UNITED STATES DISTRICT
                                           )     COURT FOR THE EASTERN
HEIDTMAN STEEL PRODUCTS, INC.,             )     DISTRICT OF MICHIGAN
                                           )
          Defendant-Appellee.              )
                                           )

**BEFORE: COLE, Chief Judge; COOK and WHITE, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.** Plaintiff Chadwick Detrick appeals the district court's grant of summary judgment to Defendant Heidtman Steel Products, Inc. ("Heidtman"), in Detrick's action arising from injuries he suffered when he fell through the drywall floor of an attic he was repairing at one of Heidtman's plants. We **AFFIRM**.

## I. Background

As early as 2007, Heidtman, a steel manufacturer with facilities in Ohio, Indiana, Illinois, and Michigan, hired JD Construction Enterprises, LLC ("JD"), an independent contractor, to perform various maintenance and installation projects at its facilities. Detrick began working for JD in the spring of 2010, left for personal reasons after 12 weeks, and was rehired in May of 2011. During the entirety of his tenure with JD, Detrick worked on-site at Heidtman's Erie, Michigan location.

In September 2011, an exhaust fan short-circuited and caused a small fire in the attic of one of Heidtman's buildings. Due to its combustible properties, Heidtman decided to replace the

cellulose insulation in the damaged attic with fire-resistant fiberglass insulation. Heidtman hired JD to repair the ceiling damage caused by the fire and to remove the cellulose insulation from the attic. On September 29, 2011, Detrick and Brent Davis, another JD employee, were assigned to remove the insulation from the attic. Their supervisor was JD employee Adam Seeburger. A third worker, Donald Schmidt, also a JD employee, was added to their team on September 30. JD did not rely on Heidtman to provide safety measures or equipment to its employees, Heidtman did not control the method and means of JD's maintenance work in the attic, and JD determined the supplies needed, timing of the project, and staffing.

The task involved using shovels and a Shop-Vac to remove the cellulose insulation and place it into large bags. To accomplish this, the workers stood on the joists that ran across the attic floor. The joists were approximately two or three feet apart from each other. The workers were instructed not to step on the drywall floor that ran between the joists.

Certain aspects of the attic are undisputed. There appears to be agreement that there was nothing unusual about this attic as compared to other attics. Witnesses also agree that there were cords strung throughout the attic that the workers had to step over while carrying bags of insulation. Detrick alleges that there were "an awful lot of nails" protruding from the ceiling and the wooden beams the workers used as handholds.[1] Additionally, Detrick testified that initially the workers only had headlamps and one flashlight. Later during the first day, September 29, Seeburger provided a floodlight, but only one of its bulbs was working—Detrick stated that they had "trouble with the lighting" that day. R. 47-2, PID 837. However, by the second day—the day of Detrick's fall—Seeburger had fixed the floodlight so both of its bulbs were functioning.

---

[1] Seeburger and Davis testified that they did not recall any protruding nails in the attic, but we must view the facts in the light most favorable to Detrick.

Davis recalled masks and gloves being provided to the workers. Detrick recalled asking Seeburger for a hard hat but none was provided. Detrick also testified that Seeburger told Detrick that he had discussed getting safety harnesses for the workers with Heidtman but was unable to as they were in use elsewhere at the Erie location. Seeburger, however, testified that he did not "have any direct contact with anybody from Heidtman Steel" with regard to the work being done on the property in 2011, and that all contact with JD was done through David Garno, the managing employee of JD. R. 32-7, PID 266. Seeburger also testified that the equipment used to clean out the attic was provided by JD, that he believed that safety harnesses were inappropriate for the work being done, and that he never discussed using safety harnesses at the site. Garno testified that he did not believe that safety harnesses were required for repairing the attic.[2]

On the day of the accident, Detrick was attempting to carry two bags of insulation out of the attic when he was confronted by a waist-high electrical cord strung in his path. Detrick set the bags down on the other side of the cord before attempting to step over it. After putting the bags down, Detrick's foot slipped off the joist he was standing on. Detrick then fell through the attic floor and landed on the concrete floor of the room below. Detrick estimated he fell about fifteen to twenty-five feet.

As a result of the fall, Detrick suffered a severely comminuted intra-articular left calcaneus fracture, a head laceration, and a concussion. Through workman's compensation, Detrick's medical bills have been paid for and he also receives $385.80 every two weeks.

---

[2] It is likely that OSHA regulations required the workers to be provided with safety harnesses, but this would have been JD's responsibility rather than Heidtman's. *See* 29 C.F.R. § 1926.501(b)(1) ("Each employee on a walking/working surface . . . with an unprotected side or edge which is 6 feet (1.8 m) or more above a lower level shall be protected from falling by the use of guardrail systems, safety net systems, or personal fall arrest systems.").

In December 2013, Detrick filed suit in the Eastern District of Michigan against Heidtman for damages, alleging premises liability, nuisance per se, and nuisance in fact.

Heidtman moved for summary judgment on Detrick's claims. Detrick's response to Heidtman's motion for summary judgment included a statement that he would be "filing a concurrent motion to amend the complaint to allege counts in negligence and the law of inherently dangerous activity" against Heidtman. R. 47, PID 809. Detrick never filed the motion requesting leave to amend his complaint, but the district court construed his response to Heidtman's motion for summary judgment as such a request. The district court denied Detrick leave to amend his complaint on the grounds of undue delay and legal futility. Finding the dangers in the attic to be open and obvious and devoid of any uniquely dangerous "special aspects," the district court granted Heidtman's motion for summary judgment. The district court also found that the work in the attic was not inherently dangerous, and that the attic did not constitute a public or private nuisance.

## II. Analysis

Detrick challenges the district court's grant of summary judgment and argues that (1) the danger of working in the attic was not an open and obvious condition of the premises, and that, even if it was, its uniquely dangerous character satisfied the special aspects exception; and (2) that Heidtman is liable under the inherently dangerous activity doctrine because it did not "carefully select" JD to perform the attic work. However, Detrick does not challenge the district court's denial of his request for leave to amend on the grounds that it was unduly delayed, a threshold inquiry to his inherently dangerous activity claim.

### A. Standard of Review

We review a district court's grant of summary judgment de novo. *Dixon v. Univ. of Toledo*, 702 F.3d 269, 273 (6th Cir. 2012). "Summary judgment is appropriate if there is no

genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Ondo v. City of Cleveland*, 795 F.3d 597, 603 (6th Cir. 2015). "We review the evidence and draw all inferences in the light most favorable to the nonmoving party." *Dixon*, 702 F.3d at 273.

A district court's denial of a motion for leave to amend a complaint is generally reviewed for abuse of discretion. *See Morse v. McWhorter*, 290 F.3d 795, 799 (6th Cir. 2002). "Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." *Benzon v. Morgan Stanley Distributors, Inc.*, 420 F.3d 598, 605 (6th Cir. 2005) (internal quotation marks omitted). "When, however, the district court denies the motion to amend on grounds that the amendment would be futile, we review denial of the motion *de novo*." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002). The futility analysis is equivalent to determining whether the claims sought to be alleged in the amended complaint could have withstood a 12(b)(6) motion to dismiss. *Herhold v. Green Tree Servicing, LLC*, 608 F. App'x 328, 331 (6th Cir. 2015).

### B. Detrick's Premises Liability Claims

#### 1. Whether the condition of the attic was open and obvious

To prove a claim of premises liability under Michigan law, a plaintiff must show that there was "(1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages." *Dybek v. Fedex Trade Networks Transport & Brokerage, Inc.*, 997 F. Supp. 2d 767, 771 (E.D. Mich. 2014). The standard of care owed to a visitor depends on whether that visitor was a trespasser, a licensee, or an invitee. *See Stitt v. Holland Abundant Life Fellowship*, 614 N.W.2d 88, 91 (Mich. 2000). "An invitee is a person who enters the land of another on an invitation that carries with it an implication that the owner has taken reasonable care to prepare the premises and to make them safe." *Hughes v. PMG Bldg., Inc.*, 574 N.W.2d

691, 695 (Mich. App. 1997). "The landowner has a duty of care, not only to warn the invitee of any known dangers, but the additional obligation to also make the premises safe[.] . . . Thus, an invitee is entitled to the highest level of protection under premises liability law." *Stitt*, 614 N.W.2d at 92 (citation omitted). Michigan law generally considers the employees of independent contractors to be invitees. *See Hughes*, 574 N.W.2d at 695.

"[T]he general rule is that a premises possessor is not required to protect an invitee from open and obvious dangers, but, if special aspects of a condition make even an open and obvious risk unreasonably dangerous, the premises possessor has a duty to undertake reasonable precautions to protect invitees from that risk." *Lugo v. Ameritech Corp.*, 629 N.W.2d 384, 386 (Mich. 2001). Michigan courts focus on the "objective nature of the condition of the premises at issue" in deciding whether a condition is open and obvious. *Id*. at 524. "Whether a danger is open and obvious depends upon whether it is reasonable to expect an average person of ordinary intelligence to discover the danger upon casual inspection." *Hughes*, 574 N.W.2d at 695.

Moreover, "[w]here the dangers are known to the invitee . . . an invitor owes no duty to protect or warn the invitee unless he should anticipate the harm despite knowledge of it on behalf of the invitee." *Buhalis v. Trinity Continuing Care Servs.*, 822 N.W.2d 254, 259 (Mich. App. 2012). *See also Jones v. DaimlerChrysler Corp.*, 793 N.W.2d 242, 243 (Mich. 2011) ("[T]he injured plaintiff could not have recovered where he was aware of the hazard, and indeed had ordered its creation.").

Here, the issue is whether Heidtman owed a duty to protect Detrick from the conditions in the attic. The parties agree that Detrick was an invitee, and was thus owed a duty of care unless the conditions in the attic were open and obvious. Detrick argues that the condition of the attic was not open and obvious because working in an attic is not a common activity, and that it

is thus a "hidden condition" that one must stand on the joists rather than on the non-load-bearing drywall. He further asserts that it was not obvious that one would have to crouch to avoid nails and step over wires in dim lighting.

The district court correctly determined that the condition of the attic was open and obvious. Detrick's contention that the conditions of an attic are inherently neither open nor obvious because it is unusual to be in an attic is inapposite. Indeed, one of the reasons individuals are rarely found in attics is due to the dangerous conditions often present therein. It is likely that an average person would know of the risks associated with working in an attic, and the workers, including Detrick, agreed that there was nothing unusual about this attic. Further, the fact that Detrick acknowledged he observed the wires, nails, and dim lighting undercuts his argument that these conditions were "hidden." Fatal to his position, though, is Detrick's statement that he was instructed not to step on the drywall. Since Detrick admitted that he knew of all the asserted dangers in the attic, he cannot establish that Heidtman owed him a duty unless he can demonstrate that there were "special aspects" of the attic that made the condition "uniquely dangerous." *Hoffner v. Lanctoe*, 821 N.W.2d 88, 96–97 (Mich. 2012).

### 2. Whether the attic contained special aspect that made it unreasonably dangerous

Even when a condition is open and obvious, Michigan law imposes a duty on a landowner to protect against harm if there are "special aspects" of the condition that make it unreasonably dangerous. *Lugo*, 629 N.W.2d at 390. "Simply put, there must be something out of the ordinary, in other words, special, about a particular open and obvious danger in order for a premises possessor to be expected to anticipate harm from that condition." *Id*. The Michigan Supreme Court has emphasized that the special aspects exception is "narrow." *Hoffner*, 821 N.W.2d at 95. "Under this limited exception, liability may be imposed only for an 'unusual'

open and obvious condition that is 'unreasonably dangerous' because it 'present[s] an extremely high risk of severe harm to an invitee' in circumstances where there is 'no sensible reason for such an inordinate risk of severe harm to be presented.'" *Id.* (quoting *Lugo*, 629 N.W.2d at 387 n.2). The risk of harm must be "so unreasonably high that its presence is inexcusable, even in light of its open and obvious nature." *Id.* Additionally, "common" and "avoidable" conditions are not uniquely dangerous. *Id.* at 96.

Detrick contends that the risk of falling an extended distance constitutes an unreasonably dangerous condition that satisfies the "special aspects" exception. Detrick relies on language in *Lugo* stating that while a common pothole contains no special aspects, "a thirty-foot-deep unguarded or unmarked pothole, if it was open and obvious" could satisfy the special aspects exception because "it is [not] reasonable to leave a gaping hole in a parking lot even though the difference in the degree of harm likely to follow from an invitee's failure to avoid the hazard is the only material difference between the two situations." *Lugo*, 629 N.W.2d at 387 n.2. The Michigan Supreme Court went on to state that "[u]nlike falling an extended distance, it cannot be expected that a typical person tripping on a pothole and falling to the ground would suffer severe injury." *Id.* Detrick also relies on *Woodbury v. Bruckner*, a Michigan Court of Appeals case that found special aspects in the risks inherent in an apartment's rooftop porch that was elevated nine feet off the ground and lacked a guardrail. 650 N.W.2d 343 (Mich. App. 2001). The court stated that in *Lugo*, "[t]he risk of falling an extended distance was cited as a special aspect." *Id.* at 348 (internal quotation marks omitted).[3] Those cases, however, are distinguishable. *Lugo* and

---

[3] Detrick also relies on *Latham v. Barton Malow Co.*, 746 N.W.2d 868 (Mich. 2008) and various OSHA and MIOSHA regulations. These citations, though, are inapposite to the premises liability claim at issue and would only be relevant to potential contractor liability claims. Although the authority supports that working at heights is dangerous, this is an obvious and

*Woodbury* each considered a condition potentially accessible to a large number of people. *Woodbury* dealt with an unguarded rooftop porch that was easily accessible to "[a]ny person at the apartment, child and adult alike." *Id.* at 345. *Lugo* stated that only a highly unusual "gaping hole in a parking lot," and not a standard pothole, would satisfy the special aspects exception. 629 N.W.2d at 388. An unmarked thirty-foot pothole in a parking lot and an outdoor, unguarded porch accessible to children present "unreasonably high" risks that are "inexcusable." *Hoffner*, 821 N.W.2d at 96. A typical attic accessible only to contractors, however, poses no such public risk.

Moreover, the year after both *Lugo* and *Woodberry* were decided, the Michigan Supreme Court ruled in *Perkoviq v. Delcor Homes-Lake Shore Pointe, Ltd.*, that a sloped rooftop containing ice and snow did not satisfy the special-aspects exception. 643 N.W.2d 212, 217 (Mich. 2002). There, the plaintiff, an employee of a subcontractor, was hired by the owner of a partially constructed house in a subdivision development to paint the upper level exterior of the home. *Id.* at 214. After finding that the conditions of the roof were open and obvious, the Court concluded that the owner "had no reason to foresee that the condition of the premises would be unreasonably dangerous, as the roof lacked any special aspects that would make it so. It could not expect that employees of subcontractors working on the house would fail to take necessary

---

undisputed premise. *Latham* considered working at heights in the context of determining "what comprises the element of 'readily observable and avoidable dangers' in a lawsuit involving a 'common work area' of a construction site." 746 N.W.2d at 869. The common work area doctrine implicates contractor liability rather than general premises liability. Thus, the analysis in *Latham* is irrelevant to the question whether there were special aspects of the conditions in the attic that rendered them unreasonably dangerous. Similarly, Detrick cites to OSHA and MIOSHA regulations requiring the use of guardrails, safety nets, or personal fall arrest systems for work performed at heights of 6 feet or higher to establish that it is dangerous to work at heights; this does not establish that the conditions in the attic contained any unreasonably dangerous special aspects. *See* 29 C.F.R. § 1926.501(b)(1).

precautions to guard against the obvious danger of the slippery condition of the roof." *Id.* at 217. "To avoid summary disposition on this type of claim, a plaintiff must present evidence of 'special aspects' of the condition that differentiate it from the typical sloped rooftop containing ice, snow, or frost." *Id*. Thus, *Perkoviq* makes clear that working at heights, even in icy conditions, is insufficient on its own to satisfy the narrow special-aspects exception to the open-and-obvious doctrine. Since Detrick has not presented any evidence that there was a special aspect of the attic that would differentiate it from a typical attic, and indeed testified that he "didn't see anything different from the few attics [he had] seen before," R. 32-6, PID 255, Detrick is unable to establish that there were special aspects that made the attic unreasonably dangerous.

## C. The Denial of Leave to Amend the Complaint

A party is entitled to amend its pleading once as a matter of course within 21 days of serving it, or, if a responsive pleading is required, within 21 days after service of a responsive pleading or a motion under Federal Rule of Civil Procedure 12(b), (e), or (f). Fed. R. Civ. P. 15(a). Outside of this timeframe, a party may only amend its pleading with the written consent of the opposing party or leave from the court. *Id.* However, "[t]he court should freely give leave when justice so requires." *Id.* "Denial may be appropriate, however, when there is undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Benzon v. Morgan Stanley Distributors, Inc.*, 420 F.3d 598, 613 (6th Cir. 2005) (internal quotation marks omitted). "Although Rule 15(a) indicates that leave to amend shall be freely granted, a party must act with due diligence if it

intends to take advantage of the Rule's liberality." *United States v. Midwest Suspension & Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995).

In his initial complaint, filed on December 6, 2013, Detrick did not assert any claims regarding contractor liability or the inherently dangerous activity doctrine. On August 31, 2015, in his response to Heidtman's motion for summary judgment, Detrick included a brief paragraph stating he was "filing a concurrent motion to amend the complaint to allege counts in negligence and the law of inherently dangerous activity against Defendant Heidtman." R. 46, PID 809. Detrick's response to Heidtman's motion for summary judgment was filed more than three months after the close of discovery, and Detrick never actually filed a motion for leave to amend his complaint. Nevertheless, the district court construed the language in Detrick's response brief as a request for leave to amend the complaint, and denied the request as untimely and legally futile.

Bypassing the opportunity on appeal to explain why his request was unduly delayed, Detrick instead dives right into the merits of his proposed amended claims and argues that a premises owner may only delegate its duty to ensure safety at a worksite to a "carefully selected" contractor, and that Heidtman did not carefully select JD to repair the attic. Detrick offers no justification for his untimeliness in seeking to add this claim, nor does he acknowledge the district court's finding of untimeliness, addressing only futility.

This court has previously found that a district court did not abuse its discretion in denying leave to amend when a party requested it two years after filing its complaint and after discovery had closed. *United States v. Midwest Suspension & Brake*, 49 F.3d at 1202. Further, this court has affirmed a district court's denial of leave to amend when the request was made after the defendant's motion to dismiss was fully briefed, because "allowing amendment under these

circumstances would encourage delay and bad faith on the part of plaintiffs and prejudice defendants who would have wasted time and expense attacking a hypothetical complaint." *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 458–59 (6th Cir. 2013).

Detrick sought leave to amend his complaint one and a half years after filing his original complaint, more than three months after the close of discovery, and after Heidtman had filed its brief in support of its motion for summary judgment. Detrick provided no explanation for his delay to either the district court or this court, and does not even discuss the denial of his request for leave to amend in his briefing. Thus, we have no basis to find that the district court abused its discretion in denying Detrick leave to amend to add negligence and inherently dangerous activity claims.

Because we affirm the denial of leave to amend on the basis that the district court did not abuse its discretion in finding that Detrick's request was unduly delayed, we need not reach the question of whether the amendment was futile.

### III. Conclusion

For these reasons, we **AFFIRM** the district court's grant of summary judgment to Heidtman.