NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0702n.06

No. 17-1168

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

STEWART SPENCER, et al.,

     Plaintiff-Appellant,

v.

DTE ELECTRIC COMPANY, et al.,

     Defendant-Appellee.

FILED
Dec 27, 2017
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

BEFORE:    CLAY, GIBBONS, and BUSH, Circuit Judges.

**CLAY, Circuit Judge.** Plaintiff Stewart Spencer appeals the district court's grant of summary judgment to Defendant DTE Electric Company and affiliated entities (collectively "DTE"), in Plaintiff's diversity of citizenship action arising from injuries sustained in an October 1, 2012 workplace accident at DTE's Belle River Power Plant.

For the reasons that follow, we **AFFIRM** the district court's order.

## BACKGROUND

### 1. Factual Background

This case arises out of a workplace accident that occurred at DTE Electric Company's Belle River Power Plant, in which Plaintiff Stewart Spencer sustained injuries after a fall.[1] The district court recounted the facts of the case, taken in the light most favorable to Plaintiff, in its

---

[1] Plaintiff Shannon Spencer seeks to recover only under a loss of consortium theory, and her claim is entirely derivative of and contingent upon the claims asserted by her husband, Stewart Spencer. Accordingly, for ease of reference, we will refer to Mr. Spencer as the sole "Plaintiff" throughout the remainder of this opinion.

January 17, 2017 order granting Defendants' motions for summary judgment and denying Plaintiff's motion for summary judgment:

> At the time of the accident giving rise to this suit, Plaintiff Stewart Spencer was an employee of non-party Monarch Welding & Engineering, Inc. ("Monarch"). In the fall of 2012, Monarch was retained by Defendant DTE to perform scheduled maintenance on an air heater—specifically, the Unit Two West Primary Air Heater ("WPAH")—at DTE's Belle River Power Plant in East China Township, Michigan. In connection with this project, DTE contracted with Defendant Brand to replace plywood decking over open areas within the WPAH so that workers could perform maintenance on the air heater without falling through these gaps.
>
>          \* \* \*
>
> The WPAH consists of an upper and lower chamber separated by a circulating heating surface called a "stator." (DTE's Motion, Ex. A, Photograph of WPAH; Ex. B, Descriptive drawings of WPAH.) Cold air is forced into the lower chamber of the unit (the "L-WPAH") and blown by a large rotating hood through the stator, and the resulting warm air is then blown out of the upper chamber (the "U-WPAH") by another large rotating hood. The stator is approximately 37 feet in diameter, and is comprised of a series of concentric steel rings intersected by steel strengthening plates. A number of metal radiators (known as "baskets") are fitted into the grid system formed by the intersecting steel components of the stator, so as to completely fill in the stator and make one large radiator to heat the air as it passes through the stator. (DTE's Motion, Ex. C, Photo from inside the U-WPAH depicting baskets.)
>
> Over several years of operation, the baskets in the WPAH get clogged with ash and must be replaced. As the old baskets are removed, DTE engineers inspect the stator to look for cracks in the welded joints where its steel components intersect, and any such cracks are repaired before the new baskets are installed. During the time between the removal of the old baskets and the installation of the new ones, there are gaps in the grid work of the stator. In the course of the maintenance work giving rise to this suit, DTE contracted with Defendant Brand to place plywood decking over the open areas within the WPAH so that workers could perform maintenance on the air heater without falling through these voids.
>
>          \* \* \*
>
> . . . . As part of this project, Plaintiff and his co-workers at Monarch spent about three weeks removing the old baskets from the stator. Plaintiff testified that this work was completed on Friday, September 28, and that he and his co-workers spent their shift on Saturday, September 29 removing their tools and picking up scrap metal so that DTE could inspect the stator the following day and determine which parts of this steel structure were in need of repair. (Brand's Motion, Ex. A, Plaintiff Stewart Spencer's Dep. at 59–62.)

According to Plaintiff, wood decking was in place to cover the gaps in the stator's grid work as he and his co-workers completed their clean-up work on September 29, but he saw Brand employees begin to remove this wood from the U-WPAH as he ended his shift that day. (*See id.* at 62–63, 66–67.) Monarch's field superintendent for DTE, Richard Castle, explained that this wooden platform had to be removed in order for DTE to inspect the stator, because DTE had to rotate the hood in the upper chamber of the air heater during its inspection and this rotation could not be done with the platform in place. (*See* DTE's Motion, Ex. D, Castle 3/25/2016 Dep. at 55; *see also* Brand's Motion, Ex. E, Quaine Dep. at 123–24; Plaintiff's Dep at 219–20). Following this September 30 inspection, DTE provided Monarch with a list of repairs to be done to the stator. (*See* Brand's Motion, Ex. J, Bazzi Dep. at 61-62; Ex. H, Castle 9/23/2015 Dep. at 38-39.)

When Plaintiff returned to work for his evening shift on Monday, October 1, 2012, the wooden platform in the U-WPAH had not been replaced and the gaps in the stator's grid work remained uncovered by wood decking. (*See* Plaintiff's Dep. at 66.) He and his co-workers began working in the L-WPAH to install a new alignment bar system when they discovered that some of the stator plates had broken loose and posed a hazard of falling down on the workers, and a Monarch co-worker asked Plaintiff to retrieve a piece of equipment known as a chain fall so that the workers could pull these plates back into place. (*See id.* at 69.)

Plaintiff recalled that there was a chain fall hanging in the U-WPAH, so he went upstairs to retrieve it. (*See id.* at 70-71.) Because the wood decking had been removed from the U-WPAH, yellow caution tape had been strung across the access point for gaining entry to this upper chamber, and there was a tag hanging from this tape warning of a falling hazard beyond that point. (*See* Plaintiff's Dep. at 73-74.) To account for this falling hazard, Plaintiff wore a safety harness and attached a retractable lanyard—also referred to as a yo-yo—between the harness and an anchor point on the wall just inside the access point that would catch him in the event of a fall. (*See id.* at 74-76.)

Because there was no wood decking in the U-WPAH, Plaintiff had to walk along the top edges of the stator's metal grid work in order to reach the chain fall, and he estimated that these metal edges were approximately a half inch thick. (*See id.* at 79-80, 234-35.) As Plaintiff traversed this path of narrow metal edges, he lost his balance and fell down into one of the gaps in the grid work. (*See id.* at 81.) As he fell into this gap, his armpit caught the top edge of one of the plates that formed the walls of the gap, causing his arm to jerk above his head and injuring his shoulder in the process. (*See id.* at 81-82.) Plaintiff managed to pull himself up out of the gap, and a co-worker eventually drove him to a nearby hospital for treatment.

*Spencer v. DTE Electric Co.*, No. 15-11421, 2017 WL 168164, at *2–*3 (E.D. Mich. Jan. 17, 2017).

## 2. Procedural History

On April 20, 2015, Plaintiff brought suit in federal district court against DTE and affiliated entities, asserting state-law claims of negligence. Specifically, Plaintiff advanced two theories of recovery against DTE: (i) that his injury was attributable to DTE's active negligence, and (ii) that DTE was liable for the acts of independent contractors working at its power plant due to its retention of control over the work of these contractors and its negligent failure to take reasonable steps to guard against the dangers faced by these contractors in common work areas. After DTE filed a notice indicating that FR Brand Holdings, Inc. and other related entities (collectively "BRAND") might be at least partly responsible for causing Plaintiff's injury, Plaintiff filed a first amended complaint on September 25, 2015, naming Brand as an additional Defendant and alleging that Brand's active negligence was a proximate cause of his injury.

Three summary judgment motions were then filed. In the first motion, Defendant Brand argued that the record failed to indicate any legal duty that it owed Plaintiff at the time of his workplace accident, where Plaintiff's injuries, in Brand's view, arose from a condition at DTE's power plant rather than any act of negligence by Brand. It follows, Brand argued, that Plaintiff's claims are governed by premises liability law, and that such claims may be brought only against a party that has possession and control of the premises. Plaintiff's motion for summary judgment sought a ruling as a matter of law that DTE retained sufficient control over the work site where Plaintiff sustained his injury to be held liable for the injury. Finally, DTE's motion sought an award of summary judgment on the ground that it did not, as a matter of law, retain sufficient control over the work site to be liable under Michigan law for the injury sustained by Plaintiff at

this site. Alternatively, DTE suggested that Brand was correct in asserting that Plaintiff's claims sound in premises liability, and it argued that the condition at its plant that gave rise to Plaintiff's injury was both open and obvious and located in an area that Plaintiff had neither permission nor authority to enter.

The district court granted summary judgment for Defendants DTE and Brand, and it denied Plaintiff's motion for summary judgment. *Spencer*, 2017 WL 168164, at *9. The district court held that Plaintiff's claims were controlled by Michigan premises liability law, that Plaintiff is characterized as an "invitee," and that "Plaintiff's sole avenue of recovery against DTE (as well as Brand) is under premises liability law, and any such recovery is precluded by the open and obvious nature of the dangerous condition that caused Plaintiff's injury." *Id.* at *8. The court also rejected Plaintiff's claim under the common work area doctrine because that doctrine only allows recovery for the negligence of independent contractors and Plaintiff did not allege that any subcontractor performed its work negligently. *Id.*

On January 30, 2017, Plaintiff filed a motion for reconsideration of the court's summary judgment ruling, in which he argued that his claims against Defendant DTE rested solely on DTE's status as owner/general contractor, but that the court nonetheless (i) analyzed these claims under the standards of premises liability, and (ii) "erroneously held there can be only one cause of action against a property owner" such as DTE, thereby limiting Plaintiffs to a premises liability theory of recovery "to the exclusion of" their owner/contractor claim. (R. 115, Motion for Reconsideration, PageID # 2615.) The district court denied the motion on January 31, 2017, concluding that Plaintiffs' argument "cannot be squared with the plain language of the Court's January 17 ruling." (R. 116, Order Denying Motion for Reconsideration, PageID # 2633.) The court explained that it "expressly 'recognized that a claim under a premises liability theory does

not preclude a separate claim grounded on an independent theory of liability based on the defendant's conduct.' . . . Nonetheless, the Court found that the record *in this case* supported only the former theory of recovery, and that this was so despite 'the absence of claims or allegations in [Plaintiff's] complaint indicating that [he was] pursuing a theory of premises liability." (*Id.* at PageID # 2633–34 (emphasis in original).)

Plaintiff now appeals the district court's order granting summary judgment for DTE.

## DISCUSSION

Plaintiff challenges the district court's grant of summary judgment in favor of DTE[2] and argues that (1) the district court erred by failing to address the "special aspects" of the hazardous condition in DTE's power plant, which preclude the application of the open and obvious bar; and (2) DTE is liable under the "common work area" doctrine, which is an exception to the general rule that a general contractor or premises owner is not liable for the negligence of independent contractors. Both theories fail on the merits.

Before proceeding to the analysis of Plaintiff's individual claims of error, it bears mentioning that Plaintiff seems to fundamentally misunderstand the district court's opinion and the common work area doctrine, generally. In the circumstances of this case, there are three avenues of recovery under Michigan law that Plaintiff could have pursued against DTE: first, DTE may be liable for its own active negligence, where a party takes some specific action that is the proximate cause of harm to the plaintiff, *see Johnson v. A & M Custom Built Homes of W. Bloomfield, LPC*, 683 N.W.2d 229, 231 (Mich. Ct. App. 2004) ("[N]othing in our state's jurisprudence absolves a subcontractor—or anyone on a construction job—of liability under the

---

[2] At no point, however, does Plaintiff make any argument regarding the granting of summary judgment in favor of Defendant Brand. Indeed, Plaintiff explicitly says that "the dismissal of Brand is not challenged on appeal." **(Brief for Appellant at 3.)** Further, on September 25, 2017, the parties entered a stipulation dismissing Brand and its affiliated entities as a party.

common-law theory of active negligence."); second, DTE, as landowner, may be subject to traditional premises liability to a business invitee, where the owner may have knowledge of a dangerous condition and fails to assure that it is fixed, *see Perry v. McLouth Steel Corp.*, 397 N.W.2d 284, 286 (Mich. Ct. App. 1986), or fails to warn a business invitee of a dangerous condition, *see Tillman v. Great Lakes Steel Corp.*, 17 F.Supp.2d 672, 679 (E.D. Mich. 1998) (listing cases); and finally, DTE might be liable under the "common work area" exception to the general rule that an owner or general contractor is not liable for the negligence of independent contractors.

Two of these avenues would permit a plaintiff to proceed against DTE *directly*: active negligence and premises liability. A common work area claim, however, is different; it proceeds against a property owner or general contractor *vicariously* for the negligence of an independent subcontractor. Plaintiff pursued an active negligence claim before the district court but has evidently abandoned it on appeal. Plaintiff makes slight mention of it by stating that "Defendant DTE was negligent in its failure to replace, or to require replacement of, the wooden platform that previously covered the overhead metal grid." (Brief for Appellant at 21.) But he then proceeds to explain that DTE breached its duty to exercise reasonable care "in two distinct capacities": as a premises owner and as the owner of a construction project who retained control over the project and common work areas. (*Id.*) Thus, Plaintiff does not pursue this claim here— and for good reason. The district court correctly concluded that "Michigan law distinguishes between claims arising from ordinary negligence and claims premised on a condition of the land," and that if a plaintiff's injury "arose from an allegedly dangerous condition on the land, the action sounds in premises liability rather than ordinary negligence." *Buhalis v. Trinity Continuing Care Servs.*, 822 N.W.2d 254, 258 (Mich. Ct. App. 2012); *see Jahnke v. Allen*,

865 N.W.2d 49, 52 (Mich. Ct. App. 2014) (holding that the facts only supported a premises liability claim, and not a negligence claim, where the plaintiff fell as a result of concrete pavers that had been removed from an area of the premises under construction); *Penny v. Schultz*, No. 331641, 2017 WL 2960661, at *6 (Mich. Ct. App. 2017) (holding that the facts only supported a premises liability claim where the plaintiff fell from a deck that did not have stairs). Further, as discussed below, Plaintiff's premises liability claim fails because the hazard was open and obvious and there are no special aspects that warrant ignoring the doctrine in this case. Therefore, Plaintiff wants to characterize his claim as a common work area claim, to which the open and obvious doctrine does not apply. *See Ghaffari v. Turner Construction Co.*, 699 N.W.2d 687, 696 (Mich. 2005). But Plaintiff cannot succeed on a common work area claim for the simple reason that the only party's negligence he alleges is DTE's own.

## Standard of Review

We review a district court's grant of summary judgment *de novo*. *Dixon v. Univ. of Toledo*, 702 F.3d 269, 273 (6th Cir. 2012). Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. "We review the evidence and draw all inferences in the light most favorable to the nonmoving party." *Dixon*, 702 F.3d at 273.

Because federal jurisdiction in this case is based on diversity of citizenship, we apply the substantive law of the forum state of Michigan. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). "In resolving issues of Michigan law, we look to the final decisions of that state's highest court, and if there is no decision directly on point, then we must make an *Erie* guess to determine how that court, if presented with the issue, would resolve it." *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 358–59 (6th Cir. 2013). "In making this determination,

'[i]ntermediate state appellate courts' decisions are also viewed as persuasive unless it is shown that the state's highest court would decide the issue differently." *Id.* (quoting *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008)). *Cf. Morrison v. B. Braun Med. Inc.*, 663 F.3d 251, 257 n.1 (6th Cir. 2011) (noting that decisions of the Michigan intermediate courts are binding authority under Michigan law).

## Analysis

### A. There were no "special aspects" that barred the application of the open and obvious doctrine.

Plaintiff's first argument is that the district court erred by holding that, as a matter of Michigan premises liability law, Defendant DTE's liability was barred by the open and obvious doctrine. Importantly, Plaintiff does not contest on appeal that the fall hazard in the U-WPAH was open and obvious. Instead, Plaintiff argues that "[t]he 'open and obvious' exemption from 'duty' does not apply where, as here, there are 'special aspects': a condition which is 'effectively unavoidable' or especially dangerous." (Brief for Appellant at 23.)

#### 1. Legal Standard

"To prove a claim of premises liability under Michigan law, a plaintiff must show that there was '(1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages." *Detrick v. Heidtman Steel Products, Inc.*, 677 F. App'x 240, 243 (6th Cir. 2017) (quoting *Dybek v. Fedex Trade Networks Transport & Brokerage, Inc.*, 997 F. Supp. 2d 767, 771 (E.D. Mich. 2014)). The standard of care owed to a visitor depends on whether that visitor was a trespasser, a licensee, or an invitee. *See Stitt v. Holland Abundant Life Fellowship*, 614 N.W.2d 88, 91–92 (Mich. 2000).

As an employee of a contractor (*Monarch*), retained by the owner of the premises (*DTE*) to perform scheduled maintenance on an air heater, Plaintiff is properly characterized as an

"invitee" under Michigan's premises liability law. *See Perkoviq v. Delcor Homes—Lake Shore Pointe, Ltd.*, 643 N.W.2d 212, 214 (Mich. 2002); *Hughes v. PMG Bldg., Inc.*, 574 N.W.2d 691, 695 (Mich. Ct. App. 1997). "[A] premises possessor owes a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land." *Tompkins v. Crown Corr, Inc.*, 726 F.3d 830, 844–45 (6th Cir. 2013) (quoting *Lugo v. Ameritech Corp.*, 629 N.W.2d 384, 386 (Mich. 2001) (internal citation omitted)).

"[T]he general rule is that a premises possessor is not required to protect an invitee from open and obvious dangers, but, if special aspects of a condition make even an open and obvious risk unreasonably dangerous, the premises possessor has a duty to undertake reasonable precautions to protect invitees from that risk." *Lugo*, 629 N.W.2d at 386. Michigan courts focus on the "objective nature of the condition of the premises at issue" in deciding whether a condition is open and obvious. *Id.* at 390. "Whether a hazard is open and obvious is measured against an objective standard of reasonability." *Tompkins*, 726 F.3d at 845 (citing *Novotney v. Burger King Corp.*, 499 N.W.2d 379, 381 (Mich. 1993)); *see also Hughes*, 574 N.W.2d at 695 ("Whether a danger is open and obvious depends upon whether it is reasonable to expect an average person of ordinary intelligence to discover the danger upon casual inspection."). Moreover, "[w]here the dangers are known to the invitee . . . an invitor owes no duty to protect or warn the invitee unless he should anticipate the harm despite knowledge of it on behalf of the invitee." *Buhalis*, 822 N.W.2d at 259; *see also Jones v. DaimlerChrysler Corp.*, 793 N.W.2d 242, 243 (Mich. 2011) ("[T]he injured plaintiff could not have recovered where he was aware of the hazard, and indeed had ordered its creation.").

The district court correctly determined that the risk of fall in the U-WPAH was open and obvious. Indeed, Plaintiff admitted that he knew of all the asserted dangers in the U-WPAH:

> Q: Did the yellow rope give you notice that it was a hazardous area? Did you know it as a hazardous area?
> A. Yes. There was a tag hanging on it.
> Q. So you were aware that it was hazardous?
> A. Yes.
> Q. Did you know what the hazard was?
> A. Fall.
> Q. So you were aware that when you stepped into this area that you were stepping into a hazardous area that had fall hazards contained within it?
> A. Yes, I did.

(R. 94-2, Spencer Dep. Trans., PageID # 1062.) Thus, he cannot establish that DTE owed him a duty unless he can demonstrate that there were "special aspects" of the U-WPAH that made the condition "uniquely dangerous." *See Hoffner v. Lanctoe*, 821 N.W.2d 88, 96–97 (Mich. 2012).

### 2. Special Aspects

"Even when a condition is open and obvious, Michigan law imposes a duty on a landowner to protect against harm if there are 'special aspects' of the condition that make it unreasonably dangerous." *Detrick*, 677 F. App'x at 244 (citing *Lugo*, 629 N.W.2d at 390). "Simply put, there must be something out of the ordinary, in other words, special, about a particular open and obvious danger in order for a premises possessor to be expected to anticipate harm from that condition." *Lugo*, 629 N.W.2d at 390. The Michigan Supreme Court has emphasized that the special aspects exception is "narrow." *Hoffner*, 821 N.W.2d at 95.

Michigan law recognizes two special aspects to a condition on the premises that may negate the open and obvious doctrine: (1) the hazard was effectively unavoidable, or (2) the hazard was unreasonably dangerous. Neither is present in this case.

### a. The fall hazard was avoidable.

"Unavoidability is characterized by an *inability to be avoided*, an *inescapable* result, or the *inevitability* of a given outcome." *Hoffner*, 821 N.W.2d at 99. "[T]he standard for 'effective unavoidability' is that a person, for all practical purposes, must be *required* or *compelled* to confront a dangerous hazard. As a parallel conclusion, situations in which a person has a *choice* whether to confront a hazard cannot truly be unavoidable, or even effectively so." *Id*.

Plaintiff's sole argument for why the risk of fall in the U-WPAH was "effectively unavoidable" is that "the responsibilities of his job required [him] to walk across the uncovered metal grid." (Brief for Appellant at 27.) The Michigan Supreme Court rejected this argument in analogous circumstances. *Perkoviq*, 643 N.W.2d at 213.

In *Perkoviq*, the plaintiff was employed by a subcontractor to paint homes in a housing development. *Id.* He was working on the roof of a partially constructed home, when he slipped on ice. *Id.* He brought a premises liability claim against the general contractor, and the Michigan Supreme Court unanimously concluded that the open and obvious doctrine barred recovery. *Id.* The Court further concluded that no special aspects existed regarding a typical slippery condition even where plaintiff was compelled to confront the hazard as a *requirement of his employment*. *Hoffner*, 821 N.W.2d at 100 (citing *Perkoviq*, 643 N.W.2d 212); *see also Detrick*, discussed *infra*.

Thus, Plaintiff cannot show that the harm was effectively unavoidable by virtue of his job responsibilities.

### b. The fall risk was not "unreasonably dangerous."

The second "special aspect" is where the condition presented is "unreasonably dangerous." "Under this limited exception, liability may be imposed only for an 'unusual' open

and obvious condition that is 'unreasonably dangerous' because it 'present[s] an extremely high risk of severe harm to an invitee' in circumstances where there is 'no sensible reason for such an inordinate risk of severe harm to be presented.'" *Detrick*, 677 F. App'x at 244 (quoting *Hoffner*, 821 N.W.2d at 95). The risk of harm must be "so unreasonably high that its presence is inexcusable, even in light of its open and obvious nature." *Hoffner*, 821 N.W.2d at 95–96. "[N]either a common condition nor an avoidable condition is uniquely dangerous." *Id.* at 96.

Plaintiff argues that the gaps in the stator grid meets this "special aspects" exception because "[t]he likelihood and severity of injuries caused in falls from unsafe equipment is attested to by many of the construction liability cases." (Brief for Appellant at 29.) In similar factual circumstances, however, this Court has found the risk of fall to not be unreasonably dangerous. *Detrick*, 677 F.App'x at 244.

In *Detrick*, the plaintiff was employed by a contractor who was hired to remove insulation in the attic of a building that had caught fire. *Id*. Removing the insulation required workers to stand on the joists that ran across the attic floor, which "were approximately two or three feet apart from each other." *Id.* at 241. Workers were instructed not to step on the drywall floor that ran between the joists. *Id.* On the day of the accident, the plaintiff was attempting to carry two bags of insulation out of the attic when his foot slipped off the joist he was standing on. *Id.* at 242. He fell through the attic, falling about fifteen to twenty-five feet to the concrete floor of the room below. *Id.* The plaintiff argued that "the risk of falling an extended distance constitutes an unreasonably dangerous condition that satisfies the 'special aspects' exception." *Id.* at 244. This Court relied on *Perkoviq* to hold that "working at heights, even in icy conditions, is insufficient on its own to satisfy the narrow special-aspects exception to the open-and-obvious doctrine." *Id.* at 245–46. Thus, "[s]ince [the plaintiff] has not presented any evidence that there

was a special aspect of the attic that would differentiate it from a typical attic, and indeed testified that he 'didn't see anything different from the few attics [he had] seen before . . . [the plaintiff] is unable to establish that there were special aspects that made the attic unreasonably dangerous." *Id.* at 246 (third alteration in original).

In this case, Plaintiff has presented no evidence to show that this fall hazard was different from any other he had experienced in the course of his employment. In fact, he testified that, like the plaintiff in *Detrick*, he was familiar with working on projects such as the U-WPAH:

> Q. Have you done this type of work before within a system similar to this air heater?
> A. Yes, I have.
> Q. How often?
> A. In my 18 years in the union, I believe I worked on them, four of them.

(R. 94-2, Spencer Dep. Trans., PageID # 1048.)

Plaintiff relies on the example given in the dicta of *Lugo* of an "unguarded thirty foot deep pit in the middle of a parking lot." 629 N.W.2d at 387. The court opined that although the condition "might well be open and obvious . . . this situation would present such a substantial risk of death or severe injury to one who fell in the pit that it would be unreasonably dangerous to maintain the condition, *at least absent reasonable warnings or other remedial measures being taken.*" *Id.* (emphasis added). Plaintiff's reliance on this example is misplaced; in this case he was provided with reasonable safety equipment and there *were* clear warnings that the condition was dangerous and that Plaintiff should contact supervisory personnel before entering the U-WPAH.

Thus, under *Perkoviq* and *Detrick*, the fall hazard in the U-WPAH was not unreasonably dangerous as to preclude the application of the open and obvious doctrine.

**B. Defendant DTE cannot be held liable under the common work area doctrine.**

"In the context of claims arising from injuries on a construction jobsite, the general rule is that only a construction worker's immediate employer is responsible for the worker's safety, and a general contractor will not typically be held liable for an injury that is caused by the negligence of its subcontractor." *Jacobs v. Walbridge Aldinger Co.*, 2016 WL 7233670, at *4 (Mich. Ct. App. Dec. 13, 2016) (unpublished) (citing *Latham v. Barton Malow Co.*, 746 N.W.2d 868, (Mich. 2008)); *see DeShambo v. Nielsen*, 684 N.W.2d 332, 335 (Mich. 2004). This rule applies to both landowners who hire independent contractors and to general contractors who hire subcontractors. *Ghaffari v. Turner Const. Co.*, 699 N.W.2d at 689–90. However, in *Funk v. General Motors Corp.*, 220 N.W.2d 641 (Mich. 1974), *abrogated on other grounds by Hardy v. Monsanto Enviro-Chem Sys., Inc.*, 323 N.W.2d 270 (Mich. 1982), the Michigan Supreme Court established an exception to this general rule of non-liability, holding that under certain circumstances, a general contractor could be held liable under the "common work area doctrine" and a property owner could be held equally liable under the "retained control doctrine." *Ormsby v. Capital Welding, Inc.*, 684 N.W.2d 320, 323 (Mich. 2004); *see, e.g.*, *Richter*, 522 F.App'x at 260–61 (holding that the common work area doctrine is an exception to the general rule that "a person who hires an independent contractor is not liable for injuries that the contractor negligently causes").

It is clear from the caselaw that the common work area doctrine is a species of vicarious liability. *See Jacobs*, 2016 WL 7233670, at *4 ("The common work area doctrine addresses vicarious liability[.]"). The district court explicitly recognized this and disposed of Plaintiff's argument in a single paragraph:

> Because the "common work area" doctrine allows the imposition of liability on a party—*i.e.*, a general contractor or property owner—that otherwise could not be

held liable for the negligence of an independent subcontractor or its employees, and because there is no evidence here of a negligent act by a subcontractor or its employee that caused Plaintiff's injury, the "common work area" doctrine does not assist Plaintiff in his effort to hold DTE liable for his injury.

*Spencer*, 2017 WL 168164, at *8. Thus, absent an argument that an independent subcontractor performed any of its duties negligently, Plaintiff may not use the common work area doctrine to pursue a claim against DTE for injuries it caused directly. And although Plaintiff did amend his complaint to include a claim against Brand, he does not appeal the district court's grant of summary judgment in favor of Brand. More importantly, in making his common work area claim against Defendant DTE, Plaintiff at no point makes the necessary argument that Brand negligently performed its duties. Indeed, Plaintiff admits that there was nothing unsafe about the decking that Brand installed in the upper chamber. (R. 94-2, Spencer Dep. Trans., PageID # 1089 ("Q: So you're not saying Brand did anything wrong in not having decking up there? A: I don't think Brand did anything wrong at all.".) And Plaintiff conceded at argument that it was DTE's sole decision to order the removal of the decking. Therefore, since Plaintiff can point to no party for whose negligence DTE may be held vicariously liable, his claim under the common work area doctrine fails as a matter of law.

## CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's grant of summary judgment in favor of Defendant DTE.